## No. 13,286

## Orleans

## ORY BROTHERS ET AL. v. MULLER

(June 2, 1930. Opinion and Decree.)
(July 1, 1930. Rehearing Refused.)

Lubin F. Laurent, of New Orleans, attorney for plaintiffs, appellants.

Frymire, Ramos & Lagarde, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. Ory Brothers, butchers, obtained judgment against Edmond Muller for $672 for meat sold and delivered.

In an attempt to recover under that judgment they caused the sheriff to seize the property in which Muller and his wife and children resided.

Mrs. Muller, claiming to be the owner of the property in her separate paraphernal right, sought an injunction to prevent the sale of the property for the community debt.

The district court rendered judgment perpetuating the injunction, and the matter is now before us on appeal by Ory Brothers.

The suit by Ory Brothers was filed on March 20, 1929, and the judgment was rendered on May 18, 1929.

Prior thereto, to-wit, on November 22, 1928, Edmond Muller had executed an act of sale in which it was recited that, for the sum of $1,500, he had sold and transferred all his title and interest in and to the property to one F. T. McIntire. On the same day McIntire, in another act of sale, transferred the property to Mrs. Rosemah Sarah Muller, plaintiff in injunction here, wife of Edmond Muller, for $1,500. This second act of sale recited that Mrs. Muller was purchasing "with her own separate and paraphernal funds."

There is in the record no proof that the value of the property exceeded $1,500 and it is not contended that the price paid by McIntire, or that the price paid by Mrs. Muller was unconscionable.

Ory Brothers, through their counsel, contend that, as the property was bought by Mrs. Muller during the existence of the community of acquets and gains existing between her and Edmond Muller, the pre-

sumption is that it is community property and that it may be seized for a community debt regardless of whether it stands in the husband's or in the wife's name. Civ. Code, art. 2402.

"All property purchased during the existence of the community in the name of the wife is presumed to belong to the community, and, in order to rebut this presumption, the wife must show with legal certainty: First, that the price was her paraphernal funds; second, that it was administered by her; third, that it was invested by her. Civil Code, 2402; Stauffer vs. Morgan, 39 La. Ann. 632, 2 So. 98; Bachino v. Coste, 35 La. Ann. 570; Pearson v. Ricker, 15 La. Ann. 119; Knoblock v. Posey, 126 La. 610, 52 So. 847; Fisher v. Gordy, 2 La. Ann. 762; Shaw v. Hill, 20 La. Ann. 531, 96 Am. Dec. 420; Davidson v. Stuart, 10 La. 148; Dominguez v. Lee, 17 La. 296; Block v. Melville, 10 La. Ann. 784." Otis et al. vs. Texas Co. et al., 153 La. 384, 96 So. 1, 4.

Counsel for Mrs. Muller concede that there is such a presumption, but call our attention to the authorities holding that, if the presumption is overcome by evidence proving the paraphernality of the funds with which the property was purchased, then the property may not be seized for the community debt.

"The property continues to be considered as a community asset until the presumption has been effectually destroyed by conclusive proof of the claim of separate ownership to it. (Rousse v. Wheeler) 4 Rob. 118; (Smalley v. Lawrence) 9 Rob. 214; (Graham v. Thayer) 29 La. Ann. 76; (Ford v. Ford) 1 La. 206; (Squier v. Stockton) 5 La. Ann. 741; (Forbes v. Forbes) 11 La. Ann. 326; (Huntington v. Legros) 18 La. Ann. 126; (Shaw v. Hill) 20 La. Ann. 531, (96 Am. Dec. 420)." Bachino vs. Coste, 35 La. Ann. 570.

"It is a well-settled question that all property acquired during the community is, presumably, community property. Without * * * dissent, doctrine and jurisprudence sustain that principle. It has none the less frequently been decided that it is by no means a conclusive presumption; that it may be shown by competent evidence that it is the property of one of the spouses, and not at all property of the community." Bartels vs. Souchon, 48 La. Ann. 783, 19 So. 941, 942.

"The wife may, however, destroy that presumption by proving that the purchase price of property, bought in her name, was paid out of her separate funds." Schwab vs. Hava et ux., 154 La. 922, 98 So. 420, 421.

The question then, which we are called upon to answer is: Has Mrs. Muller sustained the burden of establishing the paraphernality of the property? And this question can be answered only after an investigation of the facts as disclosed by the evidence in the record.

The following facts are fully established.

Some time prior to the events to which we have referred, Edmond Muller, the husband, had become indebted to Lafourche Lumber Company in the principal sum of $1,400, and, about five months prior to the filing of the suit of Ory Brothers, the lumber company had caused the seizure of the property in question, the title to which, at that time, stood on the records in the name of Edmond Muller. There is no controversy over the fact that, at that time, the property belonged to the community.

Mrs. Muller wrote to her brother-in-law, Rene Muller, and asked him for financial assistance. Rene Muller went to St. Charles parish and, after investigating conditions, according to the uncontradicted testimony of one F. T. McIntire, said:

"* * * That he positively would not do anything for Alfred Edmond Muller, who in his estimation had shown himself unfit to handle money, but that he would put up the money for the benefit of Mrs. Alfred Edmond Muller and her children if it could be arranged so that Alfred Edmond Muller would not have anything to do with the property."

: Thereupon Rene Muller turned over to McIntire $1,400 with certain instructions, and on the 22d day of November, McIntire, in carrying out those instructions, paid to Lafourche Lumber Company the amount due it by Muller, took from Muller the deed to the property to which we have referred, and then transferred it to Mrs. Muller in a deed, which, as has been already stated, recited that she, Mrs. Muller, was purchasing with her separate paraphernal funds. At that time Mrs. Muller was not consulted about the transaction, but she was called upon to sign and did sign the deed by which she acquired the property.

Her counsel now say that she purchased the property with funds donated to her by Rene Muller, but, in answer to this contention, we are told by counsel for Ory Brothers that a donation of cash can be made only by manual gift, and there was no manual gift here, since at no time was the money actually in Mrs. Muller's hands.

.. We believe that counsel for the creditor seeks to place on article 1539 of the Civil Code an interpretation much narrower than was intended by the framers thereof, and that a manual gift of money, whatever may have been the views of the commentators to whom we are referred, may be perfect and complete without the actual transferring of cash from hand to hand. An intention to give, consummated by a real delivery, is all that is necessary. In Succession of Zacharie, 119 La. 150, 43 So. 988, the Supreme Court held, as a perfect donation of cash by manual gift, a deposit by the donor of money to the credit in bank of the donees.

: Likewise, in Gibson vs. Hearn, 164 La. 65, 113 So. 766, it was held that a deposit of money in bank in the name of an agent constituted a donation by manual gift to the principal.

We see no reason why Mrs. Muller cannot be held to be the donee of the fund deposited by Rene Muller with McIntire and used by him for a purpose devoutly desired and later thankfully accepted by her.

But, if it be conceded that there was no manual gift to Mrs. Muller of the funds in question, we do not see that the position of Ory Brothers is bettered by the concession for the reason that then the act by which McIntire transferred title to Mrs. Muller really becomes an act of donation in disguise and, in the absence of any illegal purpose or unfair result, we know of no reason why the parties could not clothe the transaction in that form if they saw fit to do so.

In McWilliams vs. McWilliams, 39 La. Ann. 924, 3 So. 62, it was held that, if the price recited in the purported act of sale was not intended to be paid, then the transaction was in fact a donation in disguise.

In the absence of any showing that the value of the property exceeds the price paid and that, thus, creditors have been defrauded, we do not see that any complaint can be made.

The sale by Muller to McIntire for full cash consideration could not have been set aside as in fraud of creditors even though Muller may have been in a condition of actual insolvency at the time of that sale. Baldwin, Receiver, vs. McDonald, 48 La. Ann. 1460, 21 So. 48.

The Civil Code, in referring to sales by an insolvent debtor, provides in article 2658:

" * * * He may, although insolvent, lawfully sell for the price which is paid to him. * * * "

It is true that in certain instances sales by insolvent debtors have been set aside, but in each such case fraud on the creditors

had been shown and actual loss had resulted. For instance in Swain vs. Kirkpatrick, 143 La. 30, 78 So. 140, 141, 20 A. L. R. 665, the court said:

"The conclusion is clear that the acts of defendants, taken separately and together, deterred bidding at the sheriff's sale, except by one bidder."

It is very evident from the above that the price paid by that bidder was considered by the court as below what would have been paid had there been competitive bidding.

In Fishel vs. Irwin, 132 La. 344, 61 So. 397, a dation en paiement of property was set aside because the court found that property worth $6,000 was given in payment of a debt of $2,000.

In Appleby vs. Lehman & Co., 51 La. Ann. 476, 25 So. 132, 134, the court said:

"The question for the jury of the vicinity was whether the transaction was bona fide, or to hinder and delay creditors."

Here, since we are justified in assuming that the price paid represented the full value of the property, no question of fraud on the creditors is presented.

The property definitely left the community when the husband, as head and master thereof, transferred it to McIntire for a sufficient consideration. It could have been brought back into the community only by being repurchased with community funds; by being the produce of the reciprocal industry and labor of both husband and wife, or by the joint acquisition by the husband and the wife by donation. Civ. Code, art. 2402.

After it left the community, manifestly it was not repurchased with community funds. It is equally certain that it did not return as the result of the reciprocal labor or industry of the spouses, and a mere glance at the testimony with reference to the mental attitude of Rene Muller, who produced the funds, shows that the last thing in the world intended by him was the donation of anything to his brother, the husband of Mrs. Muller. Plainly, then, the entire transaction constitutes a donation by Rene Muller, acting through the agent, McIntire, to Mrs. Muller, either of cash or of the property itself.

If we are right in our view that it was cash that was donated, then, under the authorities cited, it was complete when the money was given to McIntire for Mrs. Muller's benefit, as at that time the intention to give, coupled with the actual delivery, consummated the donation. But if it was not the money which was donated, but the realty instead, then that donation was perfect because it was in authentic form.

That Mrs. Muller did not actually manage or administer the various transactions is of no importance, since, having been informed of them, she approved them, and now seeks to protect her rights resulting therefrom, and since the husband had nothing to do with the manager of any of those transactions.

The mistake under which counsel for the seizing creditor labors is in not distinguishing between a transfer in fraud of creditors and one in which no wrong was contemplated nor consummated. Here we find community property presumably worth $1,500. We find that the husband sells it for $1,500 and applies the proceeds to the payment of a community debt.

Have other creditors been defrauded because the party who produced the money and who, in exchange therefor, took over the title to the property at a fair price, now desires to give the property to the wife, not as an asset of the community, but

in separate, paraphernal ownership? We think not.

For these reasons we are of the opinion that the judgment of the trial court perpetuating the injunction is correct, and, therefore,

The judgment appealed from is affirmed.