509 So.2d 568 (1987)
SUCCESSION OF Carrie Marshal ERBELDING.
No. 86-388.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
*569 Raleigh Newman, Lake Charles, for defendant-appellant.
Robert E. Morgan, Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
GUIDRY, Judge.
Carrie Marshal Erbelding died June 30, 1979, survived by her husband, Harry Erbelding, and three forced heirs, Burnell J. Nunez, Clayton Nunez and Margie Nunez Mazzucco, all majors and issue of a prior marriage.
Prior to the opening of Mrs. Erbelding's succession, a dispute arose between the surviving husband and the three heirs concerning ownership of the cattle which formed the herd of Harry O. Erbelding and Carrie Marshal Erbelding. As a result of that dispute, the heirs of the decedent, in September, 1979, filed suit number 7414, Nunez, et al v. Erbelding, in the 38th Judicial District Court, seeking issuance of a permanent injunction enjoining Mr. Erbelding from selling any assets allegedly comprising part of the estate of his late wife and, in particular, all or any part of the Erbelding cattle herd.
The trial court dismissed plaintiffs' demand for injunctive relief, because plaintiffs failed to demonstrate that they would suffer irreparable injury and they had available other adequate remedies at law. This court, on appeal, affirmed the decision of the district court concluding that the succession proceeding was the proper forum for the resolution of the issue of the ownership of the livestock. See Nunez v. Erbelding, 442 So.2d 1335 (La.App. 3rd Cir.1983).
At the earlier trial, evidence was adduced concerning ownership of the cattle and by stipulation of all parties, that evidence was made applicable to the instant proceeding and a part of this record.
The trial judge's findings in the September, 1979 proceeding are, in pertinent part, as follows:
"The evidence shows that defendant had been in the cattle business several years prior to his wife's death. As a matter of fact, decedent took an active part in the management and operation of the business by preparing meals for the cowboys at round-up and branding times and by riding with her husband when he was herding and inspecting the animals.
The defendant contends that 352 head of the grown cattle in the Erbelding herd were brought into the marriage as his separate property as follows:
1. 74 head acquired as a young man before inheritance.
2. 128 head from his mother, Mrs. Lydia Erbelding, in the summer of 1938.
3. 138 head from the division of the herd of his father, J.B. Erbelding, Sr., in 1952.

*570 4. 12 head acquired from the estate of his father, J.B. Erbelding, Sr., sometime after 1955.
Defendant's position as to the 352 head of cattle is collaborated [sic] by the testimony of Archie Berwick, Elvin Donohoe, J.B. Erbelding, III, and George F. Erbelding, Jr. The Court finds that the defendant, Harry O. Erbelding did bring 352 head of cattle into the marriage. The law is clear that unless the entire herd died, the owner of such cattle will be permitted to take a like number from the community at its dissolution. Talbert v. Talbert, 199 La. 882, 7 So.2d 173 (1942); Succession of Andrus, 131 La. 940, 60 So. 623 (1913).
It is contended by plaintiffs that, from time to time, defendant gave his decedent-wife animals by placing `her' brand upon them. Therefore, every animal which bears the brand of Carrie Erbelding was her separate property and does not fall into the community estate. Mr. Erbelding testified that in order to please his wife and at her request, he put or caused to be put his wife's brand on some of the young and unbranded stock. These animals were in no way segregated from the remainder of the herd. When it became time to sell off animals at a cattle auction barn, all animals were sold together without distinction and payment was received by one check. The proceeds of the sale was then deposited into the community bank account. While this Court recognizes that it may be possible to make a manual gift of an animal, the Court is of the opinion that proof of such gift must be clear and convincing. In the case at hand, the animals bearing the Carrie Erbelding brand were treated exactly the same as the animals bearing the Harry Erbelding brand, they were sold together without segregation as to brand; the sale consideration was co-mingled and paid by one check; and the check was deposited in the community bank account.
While a brand may be indicia of ownership, it is not proof in itself. Considering all the circumstances of this case the Court finds that Harry Erbelding did not make a gift of animals to his wife.
The Court has not been furnished with an inventory of the cattle but it may be that the herd is composed of more than 352 animals. If that be true, any excess above that number would be community property and must be dealt with as any other community assets."
Further proceedings were held on March 11, 1985, and, over the objection of appellees, the trial judge heard additional testimony concerning the ownership of the cattle. At the close of that hearing, the court stated:
"You know, we went into all this business about the cattle back in September of 1979 down at the Cameron Courthouse there, and we've gone into it again somewhat today, because Mr. Newman felt there was not enough evidence regarding the brands. In looking back at the record and what had happened back in 1979, the Court does not see that the evidence we've heard today makes a great deal of difference from what we heard in 1979, and we adopt our same reasons that we had in 1979 as to how the ownership should fall. I'm referring particularly to page 3 of my opinion that was rendered in Suit Numberwhatever it is7414, or page 44 of that record. At that time, we held that the calves fell into the community, and we again hold the same way today."
Shortly after the latter hearing, all claims of Mr. Erbelding against the heirs and vice-versa were settled by a written compromise agreement, except the claim of the heirs of Carrie Erbelding to the cattle herd, which claim was specifically reserved to appellants.
On February 6, 1986, the following judgment was rendered:
"This cause came to be heard pursuant to regular assignment of March 11, 1985....
IT IS ORDERED, ADJUDGED AND DECREED that Harry O. Erbelding, surviving spouse of Carrie Erbelding, brought into the marriage 352 cattle as his separate property, so that Harry O.

*571 Erbelding is owner of 352 head of cattle, as his separate property, from the herd which belonged to Harry O. Erbelding and Carrie Erbelding, and if the herd contains more than 352 head of cattle, then an excess above that number is community property and must be dealt with as any other community asset.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Harry O. Erbelding did not make a gift of any cattle to Carrie Erbelding.
JUDGMENT RENDERED with written reasons assigned on October 10, 1980, and upon further proceedings, with oral reasons assigned on March 11, 1985."
From this judgment, denying the claims of the heirs of decedent to the separate ownership of cattle branded with the brand of Carrie Erbelding, appeal was timely taken to this court. There was no answer to the appeal.
Appellants urge that the trial court erred in the following particulars:
1. Finding the evidence sufficient to establish that appellee brought into the marriage 352 head of cattle and was, therefore, entitled to remove from the estate 352 head of cattle.
2. Holding that the heirs of Carrie Erbelding had the burden of proving by clear and convincing evidence that the cattle which bore the brand of their mother belonged to her separate estate, rather than placing the burden of proof on the party asserting that the branded cattle did not belong to her separate estate.
By assignment of error number one, appellants seek to have this court overturn a finding of fact by the trial judge. The principles governing appellate review of factual findings of the trier of fact is unequivocal. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Prudhomme v. Nationwide Mutual Insurance Co., 465 So.2d 141 (La.App. 3rd Cir.1985), writ denied, 467 So.2d 1132 (La.1985). Our careful review of the record, in light of the principles governing appellate review, reflects that the trial judge did not clearly err when he determined that Mr. Erbelding brought into the marriage 352 head of grown cattle. The evidence in the record, reasonably evaluated for credibility, furnishes ample basis for this finding. Further, we agree with the trial court's conclusion that, pursuant to this finding, Mr. Erbelding was entitled to remove from the herd 352 head of grown cattle at the termination of the community. Talbert, supra, and Succession of Andrus, supra.
Appellants next urge that the trial court wrongly placed the burden of proof upon them to establish the "separate nature" of the cattle branded with their mother's brand.
The law is abundantly clear that things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community property (La.C.C. art. 2340) and the party asserting otherwise has the burden of overcoming this presumption by clear and convincing evidence. Lambert v. Lambert, 480 So.2d 784 (La.App. 3rd Cir. 1985); Tullier v. Tullier, 464 So.2d 278 (La.1985); Succession of Lyons, 452 So.2d 1161 (La.1984).
Appellants argue that the provisions of La.R.S. 3:740(B), which declares a stock mark to be prima facie evidence of ownership, has the effect of shifting the burden of proof to Mr. Erbelding to establish the community nature of the animals bearing the mark of Mrs. Erbelding. In the alternative, they argue that the presumption of community is overcome by the fact that certain of the cattle bore the brand of Mrs. Erbelding. We find merit in neither of these contentions.
Under our law things in the possession of either spouse during the existence of the community are presumed to be community property. Therefore, animals marked with the stock mark of either husband or wife are presumed to be community property and the spouse contending otherwise bears the burden of proving the separate nature of the property.
In the instant case, appellants contends that the cattle bearing the brand of *572 Mrs. Erbelding were the subject of a donation. The trial court concluded that the attendant facts failed to support the conclusion that the cattle bearing the brand of Mrs. Erbelding had been donated to her. We agree with this conclusion for the reasons set forth by the learned trial judge.
Accordingly, for the reasons stated, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.