525 So.2d 337 (1988)
R. Hunter BRIDGES, III, and Kandi Bridges, Individually, and d/b/a Trademasters
v.
Mr. and Mrs. Milton OSBORNE.
No. CA 87 0178.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
*338 Jose Romanach, Office of Robin Poirier, Baton Rouge, for plaintiffs-appellees R. Hunter Bridges, III, Kandi Bridges d/b/a Trademasters.
Milton Osborne, Jr., Baton Rouge, for defendant-appellant Milton Osborne.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This action commenced as a suit for collection of the open account balance due on an oral contract to paint and repair one-half of a duplex apartment house and for the attorney fee authorized by La.R.S. 9:2781. The defendant husband filed an answer in which he denied owing the debt and reconvened against the plaintiffs asserting a tort claim for damages for malicious prosecution. On the day of trial, the defendant wife filed a single pleading containing a dilatory exception raising the objections of vagueness and prematurity and an answer. The trial court rendered judgment from the bench in favor of the plaintiffs and against the husband and wife for $1,178.40, with legal interest thereon from date of judicial demand until paid, an attorney fee of 25% of the principal and interest due, and all costs, subject to a credit of $200 paid after *339 suit was filed. This suspensive appeal was taken by the husband.

FACTS
In October of 1985, TradeMasters Maintenance and Repair Service (TradeMasters) was hired by the owner (a Mrs. Willis) of one-half of a duplex located at 1416 Sharlo Avenue in Baton Rouge, Louisiana, to paint her half of the building. TradeMasters is a trade name used by R. Hunter Bridges, III and his wife, Kandi O. Bridges. Hunter Bridges contacted Mrs. Yvonne Osborne about painting the other one-half of the duplex. Mrs. Yvonne Osborne is married to Milton Osborne, Jr. TradeMasters subsequently was hired to paint the Osborne one-half of the duplex. During the painting, some repairs were done, and the total cost of painting and repair of the Osborne one-half of the duplex was $1,478.40. The work on the Osborne one-half was completed on October 27, 1985, and a billing for this work was sent out on October 28, 1985, payable by November 4, 1985.
When this bill was not timely paid, Kandi Bridges called Yvonne Osborne to discuss payment. Mrs. Osborne advised she could not pay the bill in full. Mrs. Bridges and Mrs. Osborne agreed that one-half of the bill would be paid in November of 1985 and the other one-half would be paid in December of 1985. Mrs. Bridges sent out a second billing dated November 14, 1985, which stated the following: "If you wish to pay ½ of bill, then please pay $739.20 no later than Nov. 27. A balance of $739.20 will be due no later than Dec. 11."
On December 4, 1985, TradeMasters received $300 along with a copy of the November 14, 1985 billing which had the following written on it:
 $300 Enclosed
 Will send balance ASAP
 Thank you
 Yvonne Osborne
On December 6, 1985, TradeMasters sent out a third billing which gave credit for the $300 payment and stated "[b]alance due no later than December 14, 1985."
No payment was made by December 14, 1985. On December 18, 1985, the attorney for TradeMasters made demand by certified mail for payment within fifteen days. This suit was filed on January 16, 1986. TradeMasters received a $200 payment on January 30, 1986.

OBJECTIONS OF PREMATURITY AND VAGUENESS

(Assignment of Error 1)
Mr. Osborne contends the trial court erred in overruling Mrs. Osborne's dilatory exception raising the objections of prematurity and vagueness.
Only Mr. Osborne appealed the judgment of the trial court. Mrs. Osborne did not appeal, and the judgments of the trial court against her are final, definitive and executory. Mr. Osborne individually has no standing to complain on appeal about judgments adverse to Mrs. Osborne.
Mr. Osborne did not raise the objections of prematurity and vagueness in a dilatory exception in the trial court. This court will not consider issues raised by a party for the first time on appeal. State Farm Fire & Casualty Company v. Williams, 486 So.2d 849 (La.App. 1st Cir.1986).
This assignment of error is without merit.

MALICIOUS PROSECUTION

(Assignment of Error 3)
Mr. Osborne contends the trial court erred for not finding the appellees liable for malicious prosecution and rendering judgment accordingly.
The elements of a malicious prosecution action are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. Jones v. Soileau, 448 So.2d 1268 (La.1984); O'Conner v. *340 Hammond Police Department, 439 So.2d 558 (La.App. 1st Cir.1983).
The trial court found as a fact that Mr. Osborne failed to prove the elements of the tort of malicious prosecution. We have carefully reviewed the evidence of record and conclude that this factual finding is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
This assignment of error is without merit.
LIABILITY OF HUSBAND (OR WIFE) FOR COST OF PAINTING AND RPAIR OF HIS (OR HER) SPOUSE'S SEPARATELY OWNED IMMOABLE RENTAL PROPERTY

(Assignment of Error 2)
Mr. Osborne contends the trial court committed error by finding him liable for the cost of the painting and repair work performed by TradeMasters. Mr. Osborne cites La.C.C. arts. 2363 and 2360 and asserts the following:
At the outset it should be noted that there is not a scintilla of evidence in the record to show that Appellants were married at the time the obligation involved herein was incurred. Furthermore, even if the Court was justified in implicitly finding that Appellants were married at the time of the obligation, there was no evidence to prove that the obligation was incurred for the common interest of Appellants or for the interest of Appellant MILTON OSBORNE.
. . . .
For an obligation to be a community obligation it must have been incurred during the existence of a community property regime pursuant to Article 2360. In this case, there was no evidence of there being a community property regime at the time the obligation was incurred. Moreover, there was no evidence that the obligation was for Appellants common interest or for the interest of Appellant MILTON OSBORNE. Therefore, the Court erred in finding MILTON OSBORNE liable for the debt involved herein.

Existence of Community When Obligation Incurred
Mr. Osborne testified he was married to Mrs. Osborne in 1981. On cross-examination, Mr. Osborne admitted he was married to Yvonne Osborne at the time of trial (October 20, 1986). Mr. Osborne was not questioned about the status of this marriage at the time the obligation to repair and paint the duplex was incurred in October of 1985. However, Mr. Bridges gave the following testimony:
Q. Okay ... when didwhat was the arrangement, if any, that you came up with with Mrs. Osborne?
A. Okay, I called Mrs. Osborne. I told them I neededI was going to paint the duplex.
Q. Whose duplex?
A. Mrs. Willis' duplex.
Q. Okay.
A. But I couldn't see having a half painted duplex so I called Mrs. Osborne and said, "Look," I said, "I'm going to paint Mrs. Willis' duplex." I said, "Do you want your half painted?" She said, "Wait just a minute. I'll get back with you. I'm going to talk to my husband."
Q. Okay.
A. That's the very words that she said. She called me back and said, "Yes, go ahead." I stated a price.
Q. Did she tell you who her husband was?
A. No, she didn't.
. . . .
Q. So again you did not talk to Mr. Osborne not one time, right? Had no dealing whatsoever with him; is that correct?
A. No.
Q. Okay.
A. But I must point out that she did gettryshe did point out and say that she has to get backthat she'll get back with me, she'll talk to her husband.
Q. Was there any reason for suing Mr. Osborne? Why did you sue Mr. Osborne?
*341 A. Joint ownership.
Q. Do you have any proof of that being a joint ownership?
A. No. Whathowwhat proof should I have? The only proof I've got is what she said: "I'll have to speak to my husband first and then I'll get back with you." Mr. Osborne produced no documentary or other evidence to show he and Mrs. Osborne were separated or divorced in October of 1985. Mrs. Osborne did not appear or testify at the trial. The second billing dated November 11, 1985, is addressed to Mr. and Mrs. Milton Osborne at 5628 Moorstone Drive; the third billing dated December 6, 1985, is addressed to Mr. and Mrs. Milton Osborne at 5628 Moonstone Drive; and the attorney's demand letter dated December 18, 1985, is addressed to Mr. and Mrs. Milton Osborne at 5628 Moorstone Drive. These exhibits were introduced into evidence without objection.
A marriage may be proved by a third person by any competent evidence. Succession of Gaines, 227 La. 318, 79 So. 2d 322 (1955). We believe it reasonably can be inferred from these facts that Mr. and Mrs. Osborne were married in October of 1985 and were not separated or divorced.
This portion of this assignment of error is without merit.

Nature of Ownership of One-Half Interest in Duplex
As previously indicated, Mr. Bridges testified he assumed the duplex was jointly owned because Mr. and Mrs. Osborne were husband and wife. The plaintiffs introduced no documentary evidence to show the property was community property. Mr. Osborne testified Mrs. Osborne acquired her interest in the property in 1974 or 1975, that he and Mrs. Osborne were married in 1981 and that the duplex was Mrs. Osborne's separate property. Mr. Osborne introduced no documentary evidence to show the duplex was separate property. Mrs. Osborne did not appear or testify.
The trial court found the duplex was community property with the following rationale:
Also, this morning while your testimony indicated that it's her separate property, I have no evidence whatsoever to establish that ownership or to prove that it was not community property, or that you did not receive any benefits from the revenues from this property or in any way.
The property of married persons is either community or separate. La.C.C. art. 2335. Generally, community property comprises property acquired during the existence of the marriage, and includes, among other things, rents received from separate property. La.C.C. arts. 2338 and 2339. Separate property comprises, among other things, property acquired by a spouse prior to the establishment of a community property regime. La.C.C. art. 2341. Property in the possession of a spouse during the existence of a regime of community of acquets and gains is presumed to be community, but either spouse may prove that it is separate property. La.C.C. art. 2340. Comment (c) for La.C.C. art. 2340 provides as follows:
The presumption of community under this provision is rebuttable. For example the presumption is rebutted as to property acquired prior to marriage by evidence establishing the date of acquisition and as to property inherited during marriage by the judgment of possession. [Emphasis added.]
The presumption of community may be rebutted by parol evidence. Levraea v. Franchina, 499 So.2d 264 (La.App. 1st Cir. 1986); cf. Succession of Erbelding, 509 So.2d 568 (La.App. 3rd Cir.1987).
Mr. Osborne specifically testified that Mrs. Osborne acquired her interest in the duplex prior to the Osborne marriage. This evidence rebuts the presumption of community by showing a date of acquisition prior to the marriage. We are unable to tell from the trial court's reasons for judgment whether Mr. Osborne's testimony was rejected on credibility grounds or the evidence submitted was considered insufficient because no documentary evidence was submitted. If the basis of the ruling was the former, the ruling is manifestly erroneous because there is nothing in the record or the reasons for judgment to justify *342 rejecting the testimony. If the basis of the ruling was the latter, it is legally wrong. In either situation, this portion of the assignment of error has merit.

Nature of the Obligation to Paint and Repair Mrs. Osborne's Separate Property Duplex
An obligation incurred by a spouse may be either a community obligation or a separate obligation. La.C.C. art. 2359. An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation. La.C.C. art. 2360. Except as provided in La.C.C. art. 2363, all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations. La.C.C. art. 2361. La.C.C. art. 2363 provides as follows:

A separate obligation of a spouse is one incurred by that spouse prior to the establishment or after termination of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse. An obligation resulting from an intentional wrong not perpetrated for the benefit of the community, or an obligation incurred for the separate property of a spouse to the extent that it does not benefit the community, the family, or the other spouse, is likewise a separate obligation. [Emphasis added.]
Comment (c) for La.C.C. art. 2363 explains the last clause of the last sentence thereof as follows:
An obligation incurred by a spouse for his separate property is a separate obligation to the extent that it does not benefit the community, the family, or the other spouse. Thus, an obligation incurred for the separate property of a spouse may be in part a community obligation and in part a separate obligation of the spouse who incurred it [Emphasis added.]
Thus, the plaintiffs may have a claim against Mr. Osborne to the extent that the painting and repairing of Mrs. Osborne's half of the duplex benefited the community. La.C.C. arts. 2345 and 2363.[1]
The evidence shows that Mrs. Osborne rented her separate property interest in the duplex. Rent is community property. La.C.C. arts. 2338 and 2339. Ordinary expenditures required in the production of community property profits (rents) from the separate property of a spouse (Mrs. Osborne's duplex) are community obligations. Succession of Ratcliff, 209 La. 224, 24 So.2d 456 (1945); Cook v. Cook, 457 So.2d 235 (La.App. 3rd Cir.1984).
The costs of the painting and repairs [2] performed by the plaintiffs on Mrs. Osborne's duplex are ordinary expenditures necessary to maintain the property in a condition to make it attractive, safe and livable for renters. As such, these expenditures are a community obligation for which both Mr. and Mrs. Osborne are responsible. See La.C.C. art. 2345.
The result reached by the trial court in its judgment is correct.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Mr. Osborne is cast for the cost of this appeal.
AFFIRMED.
NOTES
[1] There appears to be a conflict between La.C.C. art. 2359 and La.C.C. art. 2363. Article 2359 classifies the obligations incurred by a spouse as either community or separate; it does not provide a classification for an obligation which is a combination of both. La.C.C. art. 2360 defines a community obligation but does not provide that it is any obligation not classified by law as a separate obligation. See, for example, La.C.C. art. 2338. However, Article 2363 provides that an obligation incurred for a spouse's separate property is a separate obligation to the extent it does not benefit the community. The comment explaining this clause states that such an obligation "may be in part a community obligation and in part a separate obligation" of the spouse who incurred it.
[2] See, for example, Courrege v. Colgin, 51 La. Ann. 1069, 25 So. 942 (1899).