552 So.2d 658 (1989)
Jane Frances Schroeder DANCE, Appellant,
v.
Claude Allen DANCE, Jr., Appellee.
No. 20,940-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
*659 Donald R. Miller, Shreveport, for plaintiff/appellant.
Egan & Cook by Wm. H. Cook, Jr., Shreveport, for defendant/appellee.
Before MARVIN, FRED W. JONES Jr., and NORRIS, JJ.
NORRIS, Judge.
Incidental to a divorce proceeding, Jane Schroeder Dance filed an amended petition to partition the former community regime that existed between her and Claude Dance, Jr. The sole issue before the trial court was the classification of two tracts of land known as the "Goathill" property and the "Boyce Clinic" property. The trial court held that no community property was used in the acquisition of these properties and that Mr. Dance's parents intended the purchase of a one-third interest of the properties in Mr. Dance's name to be a gift to him. Consequently, the properties belonged to the defendant's separate estate. Mrs. Dance appeals this judgment. The issues presented on appeal are (1) whether the trial court erred in declaring that property acquired only in the husband's name during the existence of the community is his separate property and (2) whether the trial court erred in not holding that it was *660 unconstitutional to apply retroactively the abrogation of the "double declaration" rule to the facts in this case.
Mr. and Mrs. Claude Dance, Jr. were married in 1956. During the marriage, Mr. Dance acquired ownership of the two tracts of land. The parties were divorced pursuant to a petition for divorce filed in 1976.
The Goathill property was sold in equal proportions to Mr. Dance, Sr., Mrs. Dance, Sr. and Mr. Dance, Jr. on May 12, 1960 for $57,478. According to Mr. Dance, Jr., his parents paid a cash downpayment of $4,500, transferred to vendor a tract of land worth $10,500, and paid the balance in five annual installments of $10,595.60 plus interest. Mr. Dance, Jr. testified that he did not contribute any sums of money toward the downpayment or installments and had no interest in the tract of land transferred by his parents. He testified his parents paid all of the property tax on the property until their deaths in 1980 and 1984 respectively. By 1980 the entire purchase price had been paid.
The Boyce Clinic, which had been in the Dance family for many years prior to its sale to Dr. Boyce, was resold by Dr. Boyce to Mr. Dance, Sr. and Mr. Dance, Jr. on October 2, 1961. Mr. and Mrs. Dance, Sr. acquired a two-thirds interest in the property and their son acquired a one-third interest. The consideration for the sale was a cash downpayment of $15,562.55 and ten annual installments of $4000 plus interest. Mr. Dance, Jr. testified that his parents paid the entire downpayment and all of the installments. He stated that he did not contribute to these payments and did not pay any property tax or property insurance while his parents were alive.
Mr. Dance, Jr. testified his parents informed him at the time of each transaction that his one-third interest in the properties was a gift. According to Mr. Dance, Jr., his parents gave him a one-third interest in the tracts because his two sisters were married to wealthy men and did not need the property. He also testified that he accounted to his sisters for the donations in his parents' successions and that they resolved the issue between them.
Mrs. Dance, Jr. testified that she could not recall the specific purchases and that she was not aware that the properties were given as a gift to her husband by his parents. Mrs. Dance stated that her husband never told her the property was his separate property. Mr. Dance, Jr. testified that he could not recall whether he told his wife that the two pieces of property were his separate property but that he always considered them a gift from his parents.
Mrs. Dance presented evidence to suggest the parties considered the land community property. On financial statements used during the marriage, Mr. Dance, Jr. did not designate his interest in the tracts as his separate property. In 1972 and 1973, Mr. Dance deducted the property taxes on joint income tax returns.
Mrs. Dance testified that she occasionally helped do work on the Goathill property. For example, she helped dig a well, clear fence lines, and plow the land. She stated that she once spent two weeks helping to clean the Boyce Clinic property.
The trial court, after hearing the testimony and considering the evidence, concluded that the tracts belonged to defendant's separate estate.

ASSIGNMENT NO. 2
By her second assignment, appellant argues that the trial court erred in concluding that it was not unconstitutional to apply LSA-C.C. art. 2340 retroactively. Appellant contends that retroactive application of article 2340, which abrogates the former "double declaration" rule, deprives her of property rights in violation of LSA-Const. art. 1 §§ 2, 4, and 23.
Prior to the enactment of article 2340, the jurisprudence, interpreting the now repealed LSA-C.C. arts. 2334 and 2402, established that immovable property conveyed to the husband during the marriage was irrebuttably presumed to be community property unless the deed of acquisition contained a double declaration that the property was acquired with funds belonging to the husband's separate estate and that it was being acquired for his separate *661 estate. Wood v. Wood, 424 So.2d 1143 (La.App. 1st Cir.1982).
In 1979, the legislature enacted a new Title VI of Book III of the Revised Civil Code to initiate an Equal Management Law. This included article 2340, effective January 1, 1980, which now provides:
Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property.
The Revision Comments state that this article suppresses the requirement of a double declaration established by Louisiana jurisprudence.
Generally, laws in Louisiana can only proscribe for the future. LSA-C.C. art. 8. However, laws which are procedural will be given retroactive effect in the absence of language to the contrary. Ardoin v. Hartford Accident and Indem. Co., 360 So.2d 1331 (La.1978); General Motors Acceptance Corp. v. Anzelmo, 222 La. 1019, 64 So.2d 417 (1953). Article 2340 establishes a presumption in favor of the community that can be rebutted by either spouse. Because the presumption is rebuttable, the article operates as an evidentiary rule and is therefore procedural in nature. Wood v. Wood, supra.; C. Samuel, The Retroactivity Provisions of Louisiana's Equal Management Law: Interpretation and Constitutionality, 39 La.L.Rev. 347 (1979), at 398. Nothing in the new "matrimonial regimes" articles, enacted by Act 709 of 1979, precludes the retroactive application of article 2340.
In Tullier v. Tullier, 464 So.2d 278 (La. 1985), the issue of the retroactivity of art. 2340 was squarely addressed. The Supreme Court acknowledged that a law cannot be applied retroactively to impair obligations of contracts or divest or impair vested rights. See also Long v. Northeast Soil Conservation Dist. of La., 226 La. 824, 77 So.2d 408 (1955); Brown v. Indemnity Ins. Co. of N. Amer., 108 So.2d 812 (La.App. 2d Cir.1959). The court further noted that the conclusive presumption of the double declaration rule was jurisprudentially created and, not being a solemn expression of legislative will, did not and could not create substantive rights of ownership in favor of the wife. Since the double declaration rule did not establish substantive rights, to abrogate it retroactively did not divest or impair vested rights of the wife. The court also reasoned that applying art. 2340 retroactively will only prevent the wife from placing into the community assets that in truth and fact are the husband's separate property. The only property the wife will lose under the new art. 2340 is property that never actually belonged to her.
Appellant argues that the facts in this case are distinguishable from Tullier v. Tullier, supra and Wood v. Wood, supra. In Tullier and Wood, the transactions in question were donations from the husband's immediate parent, whereas here the husband acquired the interest in the tracts from third parties under a credit sale deed. Appellant does not explain how this distinction is relevant to the abrogation of the double declaration requirement. Here, as in Tullier and Wood, defendant claims he obtained separate property through an act of acquisition without reciting the double declaration. While the facts of the instant case are admittedly different, they do not alter Tullier's principle that art. 2340 is to be applied retroactively.
The trial court was correct in overuling plaintiff's objection and holding that there was no constitutional bar to the retroactive application of art. 2340. Tullier v. Tullier, supra; Wood v. Wood, supra; Stone Oil Corp. v. Acadiana Consulting and Inv., 448 So.2d 901 (La.App. 3d Cir.1984). This assignment does not present reversible error.

ASSIGNMENT NO. 1
Appellant assigns as error the trial court's holding that the one-third interest in the two tracts acquired by Mr. Dance, Jr. belonged to his separate estate. The two tracts were acquired in 1960 and 1961 respectively, admittedly during the existence of the community regime.
*662 A strong presumption exists that things in the possession of a spouse during the existence of the marriage are assets of the community. C.C. art. 2340; Tullier v. Tullier, supra; Lee v. Manning, 505 So.2d 902 (La.App. 2d Cir.1987); Succ. of Erbelding, 509 So.2d 568 (La.App. 3d Cir.1987); Lambert v. Lambert, 480 So.2d 784 (La. App. 3d Cir.1985). The burden of overcoming this presumption rests upon the party asserting the separate nature of the property. Lee v. Manning, supra; Succ. of Erbelding, supra. To satisfy this burden of proof the evidence must be clear and convincing. Succ. of Lyons, 452 So.2d 1161 (La.1984); Succ. of Erbelding, supra. The burden of proving that the property is separate may be overcome by parol evidence. Bridges v. Osborne, 525 So.2d 337 (La.App. 1st Cir.1988); Levraea v. Franchina, 499 So.2d 264 (La.App. 1st Cir.1986). In evaluating the evidence, some allowance must be made where the acquisition occurred many years before the claim is asserted. Southwest Nat'l Prod. Co. v. Anderson, 239 La. 490, 118 So.2d 897 (1960); Lee v. Manning, supra.
As noted earlier, the defendant testified that his parents paid the entire cash downpayment and future installments for the tracts in question; that his parents informed him at the time of each transaction that his one-third interest was a gift; and that he accepted the gifts from his parents. This testimony is corroborated by statements given by Mr. Dance, Jr. in response to interrogatories and an accounting dated September 24, 1979. See Exhibits, Inventory (9/24/79), 69-78. These documents form part of the entire record and were introduced into evidence at the instant hearing without objection. The accounting includes attachments such as copies of the offers to purchase the tracts, executed by Mr. Dance's parents alone, and copies of checks used for the downpayment, written by Mr. Dance, Sr. This evidence makes it clear that the tracts were intended as gifts to Mr. Dance, Jr. alone.
Mrs. Dance, Jr. offered no evidence to refute the defendant's version of how the property was acquired. She testified that she was unaware if any community funds were used to buy the tracts; she did not recall making any installment payments, though these would have continued for five and 10 years respectively. She denied knowing whether defendant's parents intended to give him the one-third interests as a gift, though she admitted the parents discussed the purchase of the Goathill tract with her husband alone.
The trial court expressly determined that no community property was used in the acquisition of the tracts and that defendant's parents intended the one-third interests purchased in his name as a gift to him. The trial court apparently concluded that the parents donated to Mr. Dance, Jr. the cash necessary for him to acquire part ownership. In brief, appellant apparently concedes this conclusion as follows:
The facts show that the consideration for the property was paid, according to [Mr. Dance, Jr.'s] testimony, by his parents. [Mr. Dance, Jr.'s] testimony only shows that his parents intended to donate to him the amount of money that they used in paying for his one-third (1/3) interest in the propertynot the property itself. Appellant's Brief, 4.
The trial court's finding is obviously based on Mr. Dance, Jr.'s positive account of how the tracts were acquired and on Mrs. Dance, Jr.'s inability to contradict or controvert it. When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where there is objective evidence that contradicts the witness's story or where the witness's story is not so internally inconsistent or implausible on its face and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). We perceive no manifest error in the finding. We would also note that Mrs. Dance, Jr.'s inability to *663 recall whether the community contributed to the substantial downpayment and installments may well have reinforced the trial court in finding that the community made no payments and the tracts were indirectly donated to Mr. Dance, Jr.
The trial court's factual finding that the parents donated to their son the cash downpayment and the subsequent installment payments provided it with a sufficient basis to hold that Mr. Dance, Jr. had overcome the presumption of article 2340.
We were initially concerned over the lack of formality observed in this donation. A valid donation inter vivos must be accompanied by certain formalities. LSA-C.C. art. 1536. A manual gift accompanied by a real delivery is not subject to the general formalities of donations inter vivos. LSA-C.C. art. 1539. The evidence supports the finding that the senior Mr. and Mrs. Dance donated to Mr. Dance, Jr. the downpayment and the annual installments to pay for the tracts. A gift of money can be considered a manual gift. Succ. of Byrnes, 206 La. 1026, 20 So.2d 301 (1944). Manual gifts to someone for the account of another can constitute a real delivery. It is not necessary for the donor to deliver the money directly to the donee for it to be a valid manual gift. Gibson v. Hearn, 164 La. 65, 113 So. 766 (1927); Succ. of Zacharie, 119 La. 150, 43 So. 988 (1907); Bennett v. Markley, 138 So.2d 169 (La.App. 1st Cir.1962); Ory Bros. v. Muller, 14 La.App. 35, 128 So. 903 (Orl.Cir. 1930); see also Williams v. Augustus, 506 So.2d 630 (La.App. 4th Cir.1987), writ denied 508 So.2d 66 (La.1987). The situation was discussed in depth in Primeaux v. Libersat, 322 So.2d 147 (La.1975), and Broussard v. Broussard, 340 So.2d 1309 (La.1976), quoting 3 M. Planiol, Treatise on the Civil Law (La.St.L.Inst. transl.1959), No. 2545 as follows:
In cases of purchase in the name of another person, the object of the donation is not the acquired property, but the cash paid for it. It is an equivalent of an indirect manual gift, relieving the nominal purchaser from the payment of the price. One could say that this is a payment made cum animo donandi.

The indirect donation of money to defendant by his parents did not fall into the community but went to his separate estate. LSA-C.C. art. 2341; McElwee v. McElwee, 255 So.2d 883 (La.App. 2d Cir. 1971); Butler v. Butler, 228 So.2d 339 (La. App. 1st Cir.1969). Because the two tracts of land were acquired by defendant with separate things (the donated money), they also belong to his separate estate. C.C. article 2341; Garlick v. Dalbey, 147 La. 18, 84 So. 441 (1919).
The remainder of Mrs. Dance Jr.'s testimony concerned the parties' treatment of the property long after it was acquired. It is well settled that even in the event of a credit sale the status of property as community or separate is determined as of the time of its acquisition. Curtis v. Curtis, 403 So.2d 56 (La.1981); Succ. of Adger, 457 So.2d 146 (La.App. 2d Cir.1984). Mr. Dance, Jr.'s acts of deducting property taxes on his joint income tax return and listing the property on his financial statements is not significantly probative to show that the tracts were community property when acquired. Likewise, Mrs. Dance's work on the properties does not alter their status. Her remedy lies in a claim for reimbursement for one-half of the increase in value of the property attributed to the common labor of the spouses. LSA-C.C. art. 2368. The trial court was not clearly wrong in concluding as a fact that the presumption of community property had been overcome by the evidence presented.
For the reasons expressed, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.