# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-906


**SUCCESSION OF ANDREW M. MOORE**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 34,561
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


## J. DAVID PAINTER
## JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Glenn B. Gremillion, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED IN PART; REVERSED AND RENDERED IN PART;**
**AMENDED IN PART.**


**Susan Ford Fiser**
**Attorney at Law**
**P. O. Box 12424**
**Alexandria, LA 71315-2424**
**Counsel for Appellee:**
    **Helen Williams Moore**

**Harry Brenner Sadler**
**P.O. Drawer 1791**
**Alexandria, LA 7130-1791**
**Counsel for Appellants:**
    **Michele Moore Moran and Lorraine Moore Albritton**

PAINTER, Judge.

Lorraine Moore Albritton and Michelle Moore Moran, daughters of the decedent, Andrew Moore, appeal the trial court's rulings on a Motion to Traverse the Amended and Corrected Sworn Detailed Descriptive, an Opposition to the Tableau of Distribution, and a Peremptory Exception of Prescription, based on the determination of which property was community and which was the separate property of the decedent and his wife, Helen Williams Moore. For the following reasons, we affirm in part; reverse and render in part; amend in part; vacate in part; and remand.

FACTS

Andrew Moore was first married to Carmen Oliphant Moore. The two had four children, two of whom are the Appellants herein. Carmen died on June 28, 1977. Her probate proceeding was opened and her four children were recognized as owners of one-half of the community estate. No separate property was listed for Carmen. Andrew was recognized as owner of the other one-half of the community and as usufructuary of the part inherited by his children. On December 28, 1978, Andrew married Helen Williams, Appellee herein. On June 25, 2002, Andrew made a will and named his wife as executrix. He died on August 12, 2003.

Helen filed a Petition for Probate in August 2003. She filed a Petition for homologation of the tableau of distribution along with a detailed descriptive list in which she included 34,292 shares of CLECO stock as Andrew's separate property. On June 28, 2004, Lorraine and Michelle filed a motion to traverse the detailed descriptive list, disputing the community designation of certain assets, and claiming as community certain assets claimed by Helen as her separate property. In response, Helen filed an amended detailed descriptive list in which the CLECO stock was listed

as community property. In May 2005, Helen filed an exception to the motion to traverse. A hearing was held on August 16 and 17, 2005. The trial court rendered judgment upholding the amended detailed descriptive list submitted by Helen Moore. Lorraine and Michelle appeal.

DISCUSSION

*Burden of Proof*

> The descriptive list of succession property authorized by LSA-C.C.P. art. 3136 shall be accepted as prima facie proof of all matters shown therein, unless amended or traversed successfully. Any interested person may traverse the descriptive list at any time, on contradictory motion served on the person filing it. LSA-C.C.P. art. 3137. Article 3137 clearly states that the original descriptive list does not constitute prima facie proof once the mover's motion to traverse has been granted, and a copy of the traversed descriptive list shall be filed with the Department of Revenue.

> Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property. LSA-C.C. art. 2340. Article 2340 establishes a presumption in favor of the community which can be rebutted by either spouse. Since this presumption is rebuttable, the article is procedural in nature and can be applied retroactively to the facts of this case. *See Tullier v. Tullier*, 464 So.2d 278, 282 (La.1985). The proper burden of proof in overcoming the presumption of community contained in Article 2340 is a preponderance of the evidence. *Talbot v. Talbot*, 03-0814 (La.12/12/03), 864 So.2d 590, 600. The party asserting the separate nature of the property acquired during the marriage has the burden of overcoming a strong presumption in favor of the community. *Tullier*, 464 So.2d at 283.

*In re Succession of Hebert*, 03-531, 03-532 (La.App. 1 Cir. 9/17/04), 887 So.2d 98, 100-01, *writ denied*, 04-2571 (La. 12/17/04), 888 So.2d 872.

"In evaluating the evidence, some allowance must be made where the acquisition occurred many years before the claim is asserted. *Southwest Nat'l Prod. Co. v. Anderson*, 239 La. 490, 118 So.2d 897 (1960); *Lee v. Manning*, [505 So.2d 902 (la.App. 2 Cir. 1987)"

*Dance v. Dance*, 552 So.2d 658, 662 (La.App. 2 Cir. 1989). Parole evidence may be sufficient to rebut the presumption of community where it is uncontradicted. *Reeves v. Reeves*, 607 So.2d 626, 628 (La.App. 2 Cir.), *writ denied*, 608 So.2d 1010 (La.1992) citing *Bridges v. Osborne*, 525 So.2d 337 (La.App. 1 Cir.), *writ denied*, 530 So.2d 567 (La.1988).

*Standard of Review*

> The trial court's findings regarding the nature of the property as community or separate are factual determinations. *Harvey v. Amoco Production Company*, 96-1714 (La.App. 1st Cir.6/20/97), 696 So.2d 672, 677. The appellate court's review of fact is governed by the manifest error--clearly wrong standard. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. *See Stobart v. State, through Department of Transportation and Development*, 617 So.2d 880, 882 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 882; *Morris v. Norco Construction Company*, 632 So.2d 332, 335 (La.App. 1st Cir.1993), *writ denied*, 94-0591 (La.4/22/94), 637 So.2d 163.

*Biondo v. Biondo*, 99-0890, pp. 4-5 (La.App. 1 Cir. 7/31/00), 769 So.2d 94, 99.

Therefore, we will review the trial court's determinations under the manifest error standard.

3

*Community Character of Goodyear and CLECO Stock*

Lorraine and Michelle assert that the trial court erred in finding that all the Goodyear and CLECO stock held during the marriage in the name of Andrew was, in fact, community property. They contend that Andrew owned stock at the time he married Helen and that all the Goodyear and CLECO stock attributable to the stock Andrew owned at the time of his marriage should be designated as Andrew's separate property.

Rodney Hamilton, Investor Relations Specialist with CLECO, testified at trial with regard to the CLECO stock listed in Andrew's name alone. Documentary evidence was introduced tracing the date of purchase and of surrender of each stock certificate. The evidence adduced at trial indicated that Andrew had in his possession 3,404 shares of CLECO stock at the time of his marriage to Helen.[1] This stock is clearly separate. La.Civ.Code art. 2341. In 1978, all the stock in CLECO was transferred to a holding company, Central Louisiana Energy Holding Corp. Hamilton testified that Andrew disposed of 300 of his separate shares after his marriage but before May 1981, when a two for one stock split occurred. Therefore, at the time of the split, Andrew owned 3,104 shares of holding company stock as part of his separate estate. After the stock split, he owned 6,208 shares as his separate property. In August 1981, Andrew surrendered a number of separate shares and received an equal number, which are traceable and can be identified as corresponding to the separate shares surrendered. In October 1981, the holding company spun-off CLECO and issued .43096 shares of CLECO stock for each share owned in the holding

---

[1] 4,069 shares of CLECO Stock were listed as community property in Carmen's succession. The record indicates that after the close of her succession, Andrew transferred shares of CLECO stock to each of his four children representing their share of the community owned stock.

company. As a result, Andrew's separate estate then contained 6,208 shares of stock in the holding company and 2,675 shares of CLECO stock. In 1983, Goodyear bought out the holding company, which by that time was known as Celeron. As a result of the buy-out, the holding company shares were cancelled and shareholders were issued 1.15 shares of Goodyear stock for each share of holding company stock. Andrew's separate estate, therefore, received 7,139 shares of Goodyear stock for his 6,208 shares of holding company stock. The record does not reflect any further surrenders of CLECO or Goodyear stock certificates attributable to Andrew's separate estate.

Accordingly, we find that the trial court erred in finding that all the CLECO and Goodyear stock held in Andrew's name was community. The record clearly shows that 2,675 shares of CLECO and 7,139 shares of Goodyear stock should be listed as Andrew's separate property.

*Separate Property of Helen Willams Moore*

The Appellants assert that the trial court erred in accepting Helen's designation as her separate property of certain real estate, stocks, investments, and/or financial accounts which were acquired during the marriage. Since Helen is asserting that these items are separate, she has the burden of proving their separate nature by a preponderance of the evidence. *In re Succession of Hebert*, 887 So.2d 98. In considering the property which Helen claims as separate, it is important to note that at the time of her marriage to Andrew, Helen was receiving a pension attributable to her employment with the State of Louisiana and had savings of her own. Additionally, during the existence of the community, she inherited money, real property, and other assets from her parents and an uncle.

5

    1) Jackson Street Property

The first of these disputed properties is a rental property located on Jackson Street in Alexandria, Louisiana. Helen testified that she acquired this property with $15,000.00 of her separate funds in 1982 and put an additional $10,000.00 of separate funds into renovation and repair of the property. She further testified that the rental income from the property was put into a community account. While she had no records to substantiate this claim, the record reflects that she had sufficient assets to acquire and renovate this property. *See Breaux v. Breaux*, 555 So.2d 1001 (La.App. 3 Cir. 1990) (in which the trial court rejected a party's claim that she made mortgage payments out of separate funds where she did not show sufficient separate means for the payments). Further, Lorraine and Michelle have produced no testimony to controvert Helen's testimony in this regard.

Lorraine and Michelle argue that payment for maintenance and repairs out of community funds evidence the community nature of the property. They point out that Helen testified that the rent from the property was community and was deposited into a community account from which payment of repairs and maintenance were made. We first note that in the testimony cited by Lorraine and Michelle, Helen merely acknowledges that the rental income was deposited into a community business account. There is no testimony of record in which Helen states that repairs were paid from this account. However, she does acknowledge that taxes on the Jackson Street property were paid with a check on the community account from the rental income. However, neither of these transactions is evidence of the community nature of the Jackson Street property. Under La.Civ.Code art. 2339, rental income is a civil fruit and, as such, is community property. Deposit of rental income in a community

6

account is, therefore, completely appropriate. Further, payment of taxes and even repairs and maintenance out of the rent paid is also appropriate as it is the net income from rent after payment of the necessary expenses of the rental property, which constitutes community property. *See Sharp v. Zeller*, 110 La. 61, 34 So. 129 (La.1902) (wherein the court stated that Zeller was authorized to apply the rents of the property to the mortgage, using only the balance as profits for the benefit of the community).

Given Helen's testimony and the evidence of her means, we find that she overcame the presumption of community. Accordingly, we find no error in the trial court's determination that the Jackson Street property is Helen's separate property.

 2) Stock

Lorraine and Michelle further assert that stocks claimed by Helen as her separate property should have been included in the detailed descriptive list as community property. With regard to the Stock in Agilent Corporation, American Electric Power, OGE Energy, Entergy, WalMart, CLECO, and Goodyear, as well as a SunAmerica Securities, Inc. investment account, Helen readily admitted that she purchased them during her marriage to Andrew. However, she further testified that she purchased that stock with her own funds and that some shares were given to her as gifts by Andrew. Given the facts that there is no evidence to contradict these statements, and that the record supports the conclusion that Helen had sufficient separate funds to make these purchases, we find no error in the trial court's conclusion that the stock was Helen's separate property.

However, the record indicates that the dividends earned on the SunAmerica account during Helen and Andrew's marriage were reinvested into that account. The

dividends earned are community assets and should have been listed in the detailed descriptive list as such. La.Civ.Code art. 2339. However, the evidence of record is insufficient to allow this court to determine the amount of the dividends earned and the percentage of the SunAmerica account which represents reinvested dividends. Therefore, we remand this matter so that the trial court may make that determination.

### 3) Bank Accounts

Lorraine and Michelle assert that Pelican State Credit Union account number 003156, held in Helen's name alone, and Louisiana Capital Federal Credit Union account number 285036, also held in Helen's name alone, were community accounts and should have been listed on the detailed descriptive list as such. They argue that Helen has introduced no evidence other than her own testimony that the accounts were separate and that since the interest on the account was rolled back in, the accounts have become community as a result of commingling.

As we have discussed, Helen's testimony alone was sufficient to show that the funds she deposited into the accounts were her separate property. *Reeves*, 607 So.2d 626. However, while she testified that the interest on the accounts was rolled back into them, we have no evidence of the rate of interest or the amount rolled back in.

Helen had the burden of showing that the funds were her separate funds. *Dance v. Dance*, 552 So.2d 658(La.App. 2 Cir. 1989) Her testimony shows that, while the accounts began as separate accounts, community funds in the form of interest were mingled with the separate funds.

> "The mere mixing of separate funds and community funds in a bank account does not alone convert the entire account into community property. However, when separate funds are commingled with community funds indiscriminately so that the separate funds cannot be identified or differentiated from the community funds" all the funds are characterized as community. *Biondo v. Biondo*, p. 11 99-0890 (La.App.

1 Cir. 7/31/00), 769 So.2d 94, 103 citing *Curtis v. Curtis*, 403 So.2d 56, 59 (La.1981).

*Sharp v. Sharp*, 01-0969, pp. 3-4 (La.App. 4 Cir. 10/2/02), 830 So.2d 328, 330.

Since she did not show the amount of community funds in the account, we find that Helen has failed in her burden of differentiating the community from the separate funds. Accordingly, the accounts must be characterized as community.

*Personal Property*

Appellants assert that the trial court erred in finding that only one-half of the personal property listed as community in the estate of Carmen Moore should be listed as belonging to Andrew. The trial court found that any claim by Lorraine and Michelle had prescribed. We disagree.

Until he married Helen, Andrew had a usufruct over an undivided one-half interest in the personal property listed in Carmen's succession and was outright owner of the other undivided half. Upon his remarriage, that usufruct ended. La.Civ.Code. art. 890. At that point, he possessed the personal property as co-owner with his children. As a co-owner, he is considered to have possessed the property for all owners and "[t]he action for partition is imprescriptible." La.Civ.Code art. 817. "It is a settled issue that coheirs or coowners do not as a general rule acquire or lose by prescription against each other." *In re Succession of Moore*, 97-1668, p. 19 , 97-1669(La.App. 4 Cir. 4/1/98), 737 So.2d 749, 760, *writ denied*, 99-781 (La. 4/30/99), 743 So.2d 207.

Accordingly, we find that only an undivided one-half interest in the personal property listed in Carmen's succession should be listed as Andrew's separate property.

*Attorney's Fee*

Lorraine and Michelle assert that the trial court erred in allocating all attorney's fees of the litigation as succession expenses. They contend that at least part of the attorney's fees were spent to preserve Helen's separate property. *See Succession of Gilbert*, 95-426 (La.App. 5 Cir. 1/30/96), 668 So.2d 1212, *judgment set aside in part*, 96-949 (La. 5/31/96), 673 So.2d 1021. We agree. After considering the record herein, we find that 20% of the attorney's fees are attributable to Helen's defense of her separate property. Accordingly, we amend the trial court's allocation of costs to reflect this.

CONCLUSION

For these reasons, the trial court's judgment with regard to the community character of the CLECO and Goodyear stock listed in Andrew's name is reversed in part. Judgment is rendered finding that Andrew's separate estate contained 2,675 shares of CLECO and 7,139 shares of Goodyear stock at the time of his death. Judgment is rendered ordering the detailed descriptive list to be so amended. The remainder of the stock in CLECO and Goodyear is to remain in the community listing.

As concerns the property claimed by Helen Moore as her separate property, the trial court's judgment is affirmed except as concerns the Pelican State Credit Union and Louisiana Capital Federal Credit Union accounts. The judgment is revered as it concerns the Pelican State Credit Union account number 003156 and Louisiana Capital Federal Credit Union account number 285036. Judgment is rendered ordering the detailed descriptive list be amended to add these accounts as community assets.

We reverse the judgment of the trial court with regard to the personal property originally listed as community in the estate of Carmen Moore, and render judgment ordering that only one-half of that property should be listed as Andrew's separate property in the detailed descriptive list.

Finally, we amend the trial court's judgment allocating as succession expenses all attorney's fees connected with the trial of this matter, and we allocate 20% of the attorney's fee to Helen as attributable to the defense of her separate property. Costs of this appeal are to be divided equally between the parties.

AFFIRMED IN PART, REVERSED AND RENDERED IN PART; AMENDED IN PART.