537 So.2d 1207 (1989)
Deborah Carroll ZIEGLER
v.
Charles W. ZIEGLER, III.
No. 88-CA-0810.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1989.
*1209 R. Lee Eddy, III, Metairie, for plaintiff-appellee.
Anthony J. Engolia, III, New Orleans, for defendant-appellant.
Before SCHOTT, C.J., and WARD and PLOTKIN, JJ.
SCHOTT, Chief Judge.
This is a partition suit between divorced spouses, Charles W. Ziegler, III (hereinafter appellant), and Deborah Carroll Ziegler (hereinafter appellee). The case was tried to a commissioner whose recommendations were adopted by the trial judge. The judgment made numerous classifications of property as community or separate property and adjudicated numerous claims by appellant for reimbursement of separate funds he alleged were used for the benefit of the community. On appeal appellant specifies six errors in the judgment, and appellee, in answer to the appeal, raises nine issues.
The parties were married in May, 1950 and the community was dissolved in January, 1978. The case was tried in April, 1986. Appellant's first specification of error challenges the trial court's classification of the "Beaver Bluff" property as community property rather than his separate property. This property, consisting of 195 acres in Washington and St. Tammany Parishes, was purchased for $18,500 in 1960. The purchase price consisted of $10,000 cash and a note for $8,500 paid the following year. Title was in appellant's name but there was no declaration of paraphernality in the act of sale.
The property in question is presumed to be community placing the burden on appellant to prove the contrary. LSA-C.C. art. 2340. Appellant may rebut the presumption by proving that he acquired the property with separate funds or with a mixture of funds where the community's contribution is inconsequential compared to the amount of separate funds used. C.C. art. 2341. Where separate and community funds are commingled indiscriminately so that separate funds cannot be identified or differentiated from the community funds, all the funds are characterized as community funds. Curtis v. Curtis, 403 So.2d 56 (La.1981). In order to overcome the presumption of community appellant has to present clear and positive evidence. Lenard v. Lenard, 386 So.2d 1043 (La.App. 4th Cir.1980).
Appellant testified that he was only earning $10,000 per year and he argues that he could not have purchased the property from these earnings which were being used to support his family. He claims his mother gave him the funds to purchase the property. Appellant offered no documentary evidence to support his testimony. As the trial court noted he offered no income tax records to establish his earnings at this time. He did offer a copy of his mother's estate tax return which showed that she had given him some stock in 1959, but appellant testified that he sold the stock and used all of the proceeds except for $3,000 to retire a mortgage on the family home. After a discussion of the evidence relating to this issue the trial court concluded that appellant failed to carry his burden of proof to rebut the presumption that Beaver Bluff was a community asset. This conclusion was not manifestly erroneous.
*1210 By his next two specifications appellant contends that the trial court erred in finding his interests in two partnerships were community property. The record shows that he stipulated at the trial and in his testimony he acknowledged that these interests were community property. We conclude that this is not a viable issue on appeal.
Appellant's next claim, that a share of stock in the New Orleans Country Club he purchased for $2,800 in 1960 was his separate property, is without merit for the same reason as his Beaver Bluff claim. The trial court found that appellant's unsubstantiated, uncorroborated testimony that he used funds given to him by his mother was insufficient to overcome the presumption that this share of stock was community property. This conclusion is not clearly wrong.
Appellant next assigns error in the classification of the family home on Benjamin Street, a large diamond ring, and a silver dish as community property. The Benjamin Street home was purchased in 1956 for $32,500. In his brief appellant does not even suggest any evidence in the record which would rebut the presumption that this property was community. As to the ring, he admits he gave it to his wife, but testified that he told her at the time that she would have to return it to him if the marriage failed. The trial court rejected this testimony as preposterous. We accept that as a credibility determination of the trial court which will not be disturbed on appeal. As to the dish, appellant insists that his grandmother gave it to him. On the other hand, appellee testified that the grandmother sent the dish to her after she showed her around the City on a visit, and appellee contends that the dish is her separate property. From this conflicting testimony the trial court concluded the dish was given jointly to both parties. We cannot find this resolution to be manifestly erroneous.
Appellant's final specification is leveled against the inclusion in the judgment of a monetary award in appellee's favor to balance the assets which were allocated to appellant. Before addressing this argument we will consider the specifications of error raised by appellee in her answer to the appeal.
Appellee's first three specifications address values assigned by the trial court to three assets, i.e. two partnership interests allocated to appellant and the Benjamin Street property allocated to appellee. Appellant is the general managing partner of two partnerships in commendam, Ziegler Limited Partnership # 1 and Ziegler Limited Partnership # 3. The business of Partnership # 1 is the ownership and management of an apartment complex in New Orleans, and that of Partnership # 3 is the ownership and development of a piece of commercial real estate on Read Boulevard. Appellant's interest in each partnership is 75% and 52% respectively. Appellee called an expert real estate appraiser, Max Derbes, to establish the value of this real estate. He had done an appraisal of the properties in January, 1985 and found the market values to be $1,500,000 for the apartments and $885,516 for the Read Blvd. property. The apartments had been on the market and listed for $1,500,000 for several months prior to the trial and at trial time in April, 1986 were listed for $1,400,000. Appellant testified that the partnership had rejected an offer of $1,200,000 for the property. He stated that he would buy or sell the property for $1,150,000. The trial court assigned this last value to the property, added to it the balances of some cash accounts owned by the partnership, deducted the mortgage balance on the property, and took 75% of the remainder as the value of appellant's partnership interest.
Appellee contends that the trial court's method of evaluating the partnership interest was correct but she insists that the court erred in failing to assign a value of $1,500,000 to the property thus shortchanging her by $131,250. On the surface this argument appears to be meritorious because Derbes was the only expert to testify. Appellant produced no expert testimony. Furthermore, the figure assigned by the trial court was the one for *1211 which appellant would buy or sell. Appellant did not even profess to be a real estate appraiser. Thus, his unsubstantiated, self-serving statement as to what he would buy or sell the property for could not bind the appellee and had little if any probative value as to the property's market value.
On the other hand, the trial court and both parties have overlooked the point that what needed to be evaluated ultimately was not the real estate but the community's seventy-five percent interest in the partnership which owned the real estate. The simplistic approach of taking 75% of the difference between assets and liabilities to arrive at the value fails to address the costs involved in converting the real estate to cash, perhaps by public auction, and liquidating the partnership and distributing the shares. In oral argument both parties seemed to concede that these costs might be considerable. We are convinced that the value of an unliquidated undivided interest in a piece of real estate is rarely if ever as great as the mathematical percentage of the interest in the property's value. In this instance we are concerned not merely with an undivided interest in real estate but a percentage of a partnership which owns real estate.
Because of the dearth of evidence on the record concerning the value of the partnership interest we have concluded that the trial court's ultimate conclusion is not clearly wrong. The value assigned is based upon approximately 77% of the property's original appraised value. Furthermore, Derbes seemed to attach significance to the offer of $1,200,000 the partnership received to purchase the property. Finally, Derbes recognized that market value had declined from the time of his appraisal to the time of the trial.
Similar problems surround appellee's argument with respect to the value of the community's interest in Partnership # 3. The only evidence in the record pertains to the value of the Read Boulevard property. Derbes appraised the property in January 1985 at $12 per square foot, and the trial court valued it at $11. Considering Derbes' testimony that values had declined by trial time and that an $11 per square foot value might be realistic since that was the listing price of the property by the partnership we are not convinced that the trial court's conclusion was clearly wrong. We again take note that neither party offered any expert evidence as to the value of the community's 52% interest in this partnership, the only expert evidence being of the value of the land itself. In any event, we are not convinced by appellee that the trial court's conclusion as to the value of the interest in Partnership # 3 is clearly wrong.
The Benjamin Street house was allocated to appellee with an assigned value of $175,000. There is no evidence to support this figure. Derbes testified that its value in January, 1985 was $165,000 and by trial time this probably decreased by $10,000/$15,000. Appellant offered no expert evidence to dispute this testimony. His testimony that he would pay $175,000 for the house and appellee's reluctant admission in answer to questions by the commissioner that she would pay a premium to stay in the house had no probative value as the property's market value. Accordingly, the value of this item will be reduced to $165,000.
In appellee's next specification she claims the silver dish as her separate property. As previously discussed this argument has no merit.
By her next two specifications of error appellee questions the trial court's allowance of two claims by appellant for reimbursement for his separate funds spent on community property. The first item was the payment of the balance on the mortgage on the family home on Benjamin Street in July 1959 for $13,240. Appellant testified that he was earning only about $10,000 per year in 1959 and 1960. His mother's estate tax return shows that she made a gift to him of $17,576 in 1959. Appellant testified and the trial court found that this gift was the source of the funds used to pay the mortgage balance. The other item was $40,000 used to build a house on Beaver Bluff in 1964. In 1963 appellant earned about $19,000 and in 1964 *1212 about $26,000. Appellant's mother died in 1960. He received $145,852 from her estate in 1963 and $47,726 in 1964. Again appellant testified and the trial court found that the inherited funds were the source of the funds used to construct the house on Beaver Bluff.
A claim for reimbursement requires proof that separate funds were available and compelling proof that they were used for the benefit of the community. Succession of Blythe, 496 So.2d 1180 (La.App. 5th Cir.1986), writ denied 498 So.2d 15 (La. 1986). However, proof of benefit to the community need not be with absolute exactness and can be based upon circumstantial evidence in situations where the court is convinced that the community received the benefit. Succession of Videau, 197 So.2d 655 (La.App. 4th Cir.1967), writ denied, 250 La. 920, 199 So.2d 922 (1967).
In this case the trial court had direct evidence in appellant's testimony that he used his separate funds for the community in these instances and the trial court accepted this testimony as true. More significant is the circumstantial evidence which corroborates that testimony. Between 1959 and 1964 the parties were raising three children, sending them to private schools, and enjoying a comfortable middle-class life style. Appellant's salary in these years was far from sufficient to produce the lump sums he used to pay the mortgage and build the Beaver Bluff house. Appellee argues that appellant's proof established at best a "simple probability" that his separate funds went to the benefit of the community, and she cites authority for the proposition that this is insufficient to establish a claim for reimbursement. The record supports much more than a simple probability. The evidence shows that it would have been virtually impossible for these community advantages to be gained without appellant's separate funds.
Appellee's next specification concerning the trial court's calculation of a credit due her from the distribution of an account has merit. Her half interest in these community funds totaling $53,229 was $26,614.50. The evidence shows that appellant actually received $41,979, but in a recapitulation of what each party received the trial court found that he received only $26,614.50. The difference of $15,364.50 should be added to what he received with the result that appellee is entitled to an additional $7,682.25.
Appellee's next claim, for her share of Financial Savings Corp. stock, also has merit. This stock was properly found to be community property and was to be divided in kind between the parties. Appellant collected the money for the stock and failed to remit to appellee her share. Consequently she is entitled to an additional $11,605.50 for this item.
The trial court allocated the Benjamin Street property and an automobile to appellee. The judgment orders that appellant execute the necessary documents to effect these transfers. Appellee asks that the judgment be modified to make these transfers without the necessity of participation by appellant. Appellee asserts that appellant is so recalcitrant and obstinate that he will not cooperate regardless of the consequences. We are convinced that the better course of action would be to avoid further contact between these parties wherever possible. Consequently, the judgment will be amended as requested by appellee.
Finally, we turn to the remaining specification of error raised by appellant. The commissioner's report adopted by the trial judge concluded with a recapitulation in which allocations of community property to each party were listed as follows:

To Appellant $1,167,276.86
To Appellee 209,594.52
 _____________
Total Community $1,376,871.38
Half interest 688,435.69
Less Amount Received
by appellee 209,594.52
Less Amount owed by
Appellee to Appellant 8,845.88
Balance due appellee $ 469,995.29

The trial court awarded a judgment in favor of appellee for $469,995.29. Appellant contends that this result is unduly burdensome and unfair because it forces him to sell the real estate in the partnerships in *1213 order to make the payment to appellee at a time when the real estate market is severely depressed.
Of the $1,167,277 allocated to appellant the interests in the two partnerships have a combined value of $877,115.37. Of the remaining $290,161.49 most is cash or easily liquidated assets. But the amount of these is far short of the amount of the judgment. Appellant argues that some of the "real estate" should be allocated to appellee in order to equalize the shares.
R.S. 9:2801(4)(c) authorizes the court to make allocations according to its discretion. The statute mandates consideration of the nature of the asset and "other circumstances that the court deems relevant." Specifically authorizing the court to impose a mortgage or lien on either community or separate property as security for the cash amount charged to one spouse for the account of the other, the statute clearly contemplates payment of the charge out of separate as well as community funds.
Addressing appellant's argument, his repeated references to the real estate allocated to him are clearly inaccurate. If simple pieces of real estate were involved, the solution might be to assign them by lots to the parties or even partition them by licitation. But these are fractional interests in partnerships in commendam in which appellant is the general partner. To suggest that one of these interests with the position of general partner could be allocated to appellee is impractical. Appellee does not profess to have the qualifications to be the general partner of either entity. Furthermore, the allocation of a partnership interest including the general partnership would have a significant impact on the interests of the other partners who have no connection with these proceedings. Because of the special nature of these assets the problems arising out of the allocation of one to appellee would likewise arise if they were offered at private sale or partitioned by licitation. Considering these factors we have concluded that allocation of these partnership interests by the trial court was within the sound discretion conferred by R.S. 9:2801(4)(c).
The record supports the inference that appellant has a significant amount of separate property assets at his disposal. He has been separate in property since January, 1978 so that for over ten years his earnings have been his separate property. He inherited a significant sum from his mother. Neither in his testimony nor with other evidence such as income tax returns did he attempt to rebut this inference. Under these circumstances we conclude that his argument has no merit.
The judgment will be amended to increase the amount due appellee by $5,000 (to provide for the correct value of the Benjamin Street property allocated to appellee) plus $7,682.25 (to provide for the additional $15,364.50 which appellant received as a distribution from Partnership # 1) plus $11,605.50 (to provide for the price of the Financial Services Corp. stock which appellant failed to remit to appellee).
Accordingly, the judgment appealed from is amended to delete that portion ordering appellant to execute documents to transfer the Benjamin Street property and to add to the judgment the following:
"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Deborah Carroll Ziegler, divorced wife of Charles W. Ziegler, III, is hereby recognized as the sole owner of, and vested with complete and full ownership and possession of:
ONE CERTAIN LOT OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in th Sixth District of the City of New Orleans, in Square Number Sixty-Two, Bounded by Benjamin, Audubon, Dominican, and Broadway Streets, designated by the Letter "X" on a survey made by E.L. Eustis and Sons, Civil Engineers and Surveyors dated May 17, 1956, a copy of which is annexed to vendor's act of purchase, and, according to which, said lot commences at a distance *1214 of one hundred feet from the corner of Benjamin and Audubon Streets, and measurers thence fifty feet front on Benjamin Street, by a depth between equal and parallel lines of seventy feet. The improvements thereon bear the Municipal Number 7117 Benjamin Street.
Being the same property acquired by Deborah L. Carroll, wife of, and Charles W. Ziegler, III, from Union Savings and Loan Association by act before Margaret Gaudin, Notary Public, dated July 25, 1956, recorded in COB 611, folio 407 on July 26, 1956.
and that any and all interest whatsoever of Charles W. Ziegler, III in the above described property is hereby transferred, conveyed, assigned and granted to Deborah Carroll, her heirs and assigns forever.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that any and all interest whatsoever of Charles W. Ziegler, III in and to one 1972 Oldsmobile Cutlass, 2 door automobile, VIN # 3J67K2M244448, Louisiana Title No. 6738253, current license number 241B578, is hereby transferred, conveyed, assigned and granted to Deborah Carroll Ziegler and she is hereby recognized as the sole owner and vested with complete and full ownership and possession of said vehicle;
IT IS FURTHER ORDERED that the State of Louisiana, Office of Motor Vehicles, or other appropriate state agency, shall issue a new title and registration for the above described vehicle to Deborah Carroll Ziegler and cancel any previous title and registrations."
The judgment is further amended to increase the amount of the judgment in favor of appellee, Deborah Carroll Ziegler, against appellant, Charles W. Ziegler, III to the sum of $494,283.04. In all other respects the judgment is affirmed.
AFFIRMED AS AMENDED.