556 So.2d 668 (1990)
Robert T. MARTINEZ
v.
Katherine DeMontluzin MARTINEZ.
No. 88-CA-2082.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1990.
Rehearing Denied February 21, 1990.
Writ Denied April 30, 1990.
*669 A.D. Freeman, New Orleans, for plaintiff/appellee.
Robert C. Lowe and Edith H. Morris, New Orleans, for defendant/appellant.
Before BYRNES, ARMSTRONG, and PLOTKIN, JJ.
PLOTKIN, Judge.
Katherine DeMontluzin appeals a trial court judgment awarding her husband of 28 years, Robert Martinez, the family domicile located at 6007-6009 St. Charles Avenue, claiming the trial court incorrectly classified the property as "mixed" separate and community property. Ms. DeMontluzin alleges that the property should have been classified as community, subject to Mr. Martinez's right to reimbursement for his separate property used in purchasing the home. She also contests the trial judge's decision to arbitrarily divide the community antiques between the parties.
Mr. Martinez cross appeals, also contesting the trial court's classification of the family domicile as "mixed," claiming it should have been classified as his separate property, subject to the community's right to reimbursement for community property *670 used in purchasing the home. Additionally, Mr. Martinez contests the trial judge's classification of a Merrill Lynch portfolio account as community property and the judgment awarding Ms. DeMontluzin permanent alimony. He also challenges the designation and valuation of furniture, objects of art, jewelry, country club stock, insurance policies and certificates of deposit.
Matrimonial Domicile
Robert Martinez and Katherine DeMontluzin were married in 1957 and had one child, Margot. In 1969, while the couple was living in Antwerp, Belgium, where Mr. Martinez was a salaried employee of Lykes Steamship Co., the husband inherited one-half interest in his family home at 6007-6009 St. Charles Avenue in naked ownership in indivision with his brother and sister, when his mother died. The husband and his siblings inherited the other half of the property when their father died in 1971.
In 1972, while still residing in Antwerp, the other two-thirds interest in the property not owned by Mr. Martinez was purchased by the community from Mr. Martinez's brother and sister. At that time, Hibernia Homestead granted a mortgage on the property for $60,000. The parties agree that entire $60,000 was given to Mr. Martinez's siblings and that the mortgage payments were made with community funds.
The parties returned to New Orleans and moved into the house in 1974. Between 1974 and the time the parties separated in 1985, the property was renovated extensively, on the initiative of Ms. DeMontluzin. Ms. DeMontluzin alleges that the renovated house reflects her tastes and preferences and claims that Mr. Martinez does not even like the house, citing his testimony that she had "butchered" the property. The record indicates that she has lived in the house since the separation in 1985 and that Mr. Martinez has lived at a "camp" on Veronese Road during that period.
Following an eight-day trial, the district judge issued interim reasons for judgment in which he indicated that he had decided to give the house to Ms. DeMontluzin. However, when he issued his final judgment, he classified the property as one-third the separate property of Mr. Martinez and two-thirds community property. He also found that the community had expended $93,324 to renovate the home and ordered Mr. Martinez to reimburse the community $31,108 for the amount spent to improve his one-third interest. His reasons for judgment, as well as the transcript of the hearing on motions for new trial filed by both parties, indicate that his decision to allocate the house to Mr. Martinez was based on his belief that he had no discretion to award the house to Ms. DeMontluzin since he had found that one-third of it was Mr. Martinez's separate property.
The Louisiana Civil Code articles relevant to this controversy provide, in pertinent part, as follows:
Art. 2335. Classification of property
Property of married persons is either community or separate.
Art. 2338. Community property
The community property comprises:... property acquired with ... community and separate things, unless classified as separate property under Article 2341....
Art. 2340. Presumption of community
Things in the possession of a spouse during the existence of a regime of community of acquests and gains are presumed to be community, but either spouse may prove that they are separate property.
Art. 2341. Separate property
The separate property of a spouse is his exclusively. It comprises: ... property acquired by a spouse with ... separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used....
Art. 2367. Use of separate property for the benefit of community property
If separate property of a spouse has been used for the acquisition, use, improvement, or benefit of community property, that spouse upon termination of the community is entitled to one-half of the amount or value that the property had at the time it was used if there *671 are community assets from which reimbursement may be made.
In Curtis v. Curtis, 403 So.2d 56 (La. 1981), the Louisiana Supreme Court reversed an opinion of this court, holding that immovable property purchased during the existence of a matrimonial regime was part separate and part community. The property at issue in the Curtis case had been purchased in the wife's name and the husband had on at least two occasions appeared to acknowledge the separate nature of the property. The wife made a $28,500 down payment with her separate funds, then financed the balance with a mortgage, paid with rentals from the property. On dissolution of the community, the husband sought classification of the property as community based on the fact that community property (rentals) had been used to make the mortgage payments. The trial court classified the property as the wife's separate property and recognized the community's right to reimbursement of the community funds used for mortgage payments. This court reversed, finding the property was 47.5% separate property and 52.5% community property. The supreme court reversed this court's ruling and reinstated the trial court's decision, stating as follows:
The Court of Appeal was in error in holding the property part community and part separate. While other community property states may categorize property paid for in part with separate funds and in part with community funds as mixed, Louisiana does not do so. Under our law property is characterized as either community or separate. The Civil Code articles applicable to this case ... created a strong presumption that all property acquired during the existence of a marriage fell into the community of acquests and gains.
Id. at 57-58.
The Curtis case therefore reaffirmed the long-standing principle of Louisiana law quoted in Blalock v. Blalock, 259 So.2d 367 (La.App. 2d Cir.1972) as follows:
The law also is settled that when separate funds and community funds, even though distinguishable and not commingled, are used in making up the consideration paid for property acquired during the existence of the community, the property so purchased becomes community property, although the community may be indebted to the separate estate for the amount of separate funds used in making the purchase.
Id. at 370. (Citations omitted.)
To support his position that the trial court correctly classified the property, Mr. Martinez relies on Albright v. Albright, 521 So.2d 498 (La.App. 4th Cir.), writ denied 522 So.2d 571 (La.1988), in which this court affirmed a trial court decision characterizing an interest in property purchased under similar circumstances to those in the instant case was one-half separate property and one-half community property. The Albright opinion is based on this court's affirmation of the trial court's finding that a sale-resale to a mortgage company done for the purpose of giving the mortgage company a vendor's lien on the property does not change the character of the property. Id. This court found no evidence that the plaintiff in the Albright case intended to donate her separate interest in the property to the community. Id. at 500. None of the community property articles argued in the instant case were discussed in the Albright opinion.
We hold that the result in Albright does not control the instant controversy because the two cases are easily distinguished.[1] In fact, a close review of the record in light of the Albright case reveals that the similarities are only superficial. The only common denominator between the two cases is the fact that in each one of the spouses inherited an undivided interest in property in which the community later acquired *672 an additional interest; there the likeness stops.
First, the factual scenerio of the two cases is distinguishable. In Albright, the court found that the "new mortgage was almost identical to the existing balance on the prior mortgage" and that no new funds were advanced by the homestead in connection with the refinancing arrangement by which the community gained its interest in the property. That is not true in the instant case. Here, the homestead association advanced $60,000 in connection with the mortgage and the community became indebted for the payment of the entirety of those funds. Prior to this arrangement, no mortgage existed on the property. In fact, there is testimony in the record which indicates that $60,000 was the maximum amount that any financial institution would lend on the property. At the time the mortgage was perfected, the house was appraised at $73,500; therefore, the $60,000 mortgage represented more than 80 per cent of the appraised value. Therefore, the community became indebted for repayment of the same amount of money it would have been required to pay had it bought the property from third parties.
Second, the Albright opinion noted specifically that the evidence in the case indicated that the spouse who had inherited the separate interest "did not intend to donate half of her interest in this immovable property to her husband." Id. at 500. The opposite is true in the instant case. All the record evidence indicates that the entire parcel was treated as community property from the time the mortgage was signed. Mr. Martinez never indicated, by word or deed, that he wished to retain the separate nature of his interest in the property. From the date of the mortgage in 1974 to the date of the couple's separation in 1985, the property was treated as a community asset. The enhancement and renovation of the property was turned over to Mrs. DeMontluzin. The testimony elicited at trial indicated that Mr. Martinez was never involved in decisions concerning the renovation of the house; all artistic and esthetic decisions were left to Ms. DeMontluzin without interference from her husband. In fact, Mr. Martinez testified at trial that Ms. DeMontluzin had "butchered" his family home; however, none of the evidence indicates that he ever took any steps to prevent any of Ms. DeMontluzin's projects. In short, Mr. Martinez turned the administration of the property over to Ms. DeMontluzin and never asserted his separate interest in the financial arrangements or the subsequent use of the property. Perhaps the most important indication of his intention is the fact that he moved out of the house when the parties separated, leaving the property in the custody of his wife. Unlike the Albright case, all of this evidence indicates that Mr. Martinez intended to donate his separate interest in the property to the community. For those reasons, the holding in Albright does not control the instant controversy.
In stating his reasons for classifying the property in the instant case as part separate, part community, the trial judge relied partly on prior jurisprudence holding that a mere sale-resale to a financial institution for the purpose of allowing the mortgagor to gain a vendor's lien on the property does not change the character of the subject property. See Ruffino v. Hunt, 234 La. 91, 99 So.2d 34 (1958); Fontenot v. Fontenot, 339 So.2d 897 (La.App. 3d Cir. 1976), writ denied 342 So.2d 217 (La.1977). However, this case is distinguishable from the sale-resale cases because in all the prior jurisprudence, the parties did not gain any additional property as a result of the sale-resale. In the instant case, the community gained two-thirds of the interest in the property. For that reason also the trial court was incorrect in classifying the property as part separate, part community.
By reference to the codal articles quoted above, it is obvious that the matrimonial domicile in the instant case should be classified as community property because it was purchased with separate and community things and the value of the community things was not inconsequential in comparison to the separate things. La.C.C. arts. 2338 and 2341. In fact, the value of the community things used was almost twice the value of the separate things used.
*673 Therefore, the decision of the trial court classifying the property as part separate, part community is reversed. Therefore, the house on St. Charles Avenue is reclassified as community property.
This reclassification makes three adjustments to the figures used by the trial court in dividing the community necessary. First, Mr. Martinez is entitled to reimbursement for one-half the value of his separate property used to acquire the community property. La.C.C. art. 2367. We find that the value of his one-third interest in the property at the time of acquisition was $30,000. He is therefore entitled to reimbursement of $15,000 from Ms. DeMontluzin's portion of the community. Second, we must make adjustments in the community value of the property. In dividing the community, the trial judge valued the two-thirds community interest in the house at $304,000. Therefore, the value of the entire property is $456,000. Third, Mr. Martinez was ordered to reimburse the community $31,108 for improvements to his one-third separate interest in the property. Since none of the property belongs to his separate estate, he owes no reimbursement for the improvements to the property. These changes are reflected in the recapitulation of the community division at the end of this opinion.
Having found that the matrimonial domicile was community property, we must now decide which spouse should be allocated that property. The trial judge indicated that he had no choice but to allocate the house to Mr. Martinez because of his finding that the property was one-third Mr. Martinez's separate property. Our reclassification of the property makes it unnecessary for us to decide whether the trial judge was correct in that ruling. We will therefore look to the statutory law to decided which spouse should receive the house on St. Charles Avenue.
LSA-R.S. 9:2801(4)(c) provides, in pertinent part, as follows:
The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant....
The record in the instant case reveals that Mr. Martinez moved out of the matrimonial domicile on St. Charles Avenue sometime in 1985. Since that time, he has lived at his "camp" at Veronese Road. He stated at trial that all the renovations to the house on St. Charles Avenue had been made at his ex-wife's initiative and that they were primarily made with Ms. DeMontluzin's money. Additionally, he stated that his ex-wife had "butchered" the house and that she had destroyed what he remembered as his family home. However, he admitted that he was consulted about all the improvements. His testimony made it obvious that he is not interested in living in the house on St. Charles Avenue.
Ms. DeMontluzin, on the other hand, has expressed great interest in living in the house. In fact, she has gone to great effort and expense over the years to convert the house to conform to her tastes and needs. The record shows that she has painstakingly furnished the house with antiques which reflect her taste, as well as her business interests. In short, Ms. DeMontluzin's entire lifestyle has centered around the house. Since the parties separated in 1985, Ms. DeMontluzin has continued to live in the house. All these facts taken together convince us that the property should properly be allocated to Ms. DeMontluzin.
Allocation of the St. Charles Avenue property to Ms. DeMontluzin is also supported by the trial judge's comments in he record. He stated in the hearing on the motions for new trial that he had always intended to allocate the house to Ms. DeMontluzin, until he decided that Mr. Martinez's separate estate owned one-third of the property. He indicated that the house should be given to Ms. DeMontluzin should his classification of the property be reversed.
*674 Therefore, we now amend the judgment of the trial court to allocate the house to Ms. DeMontluzin. This change is also reflected in the recapitulated community property division at the end of this opinion.
Antiques
Ms. DeMontluzin also contests the trial court's decision to arbitrarily award the antiques by going down a list and giving five to her and five to her former husband. In brief, she claims that all the antiques should have been awarded to her because she was the one who collected them.
The record reveals that Ms. DeMontluzin engaged in a kind of informal antique business at least from 1974, when the couple moved back to New Orleans from Belgium, until 1980. Unquestionably, she made the actual purchases of the antiques, but she does not claim that the antiques were purchased with separate funds. Nor does she contest their classification as community property. She simply states that all of the antiques should have been allotted to her in the partition because she collected them and they enhance the value of her home.
In his interim reasons for judgment, the trial court valued the antiques and requested that the parties reach an agreement concerning the allocations of the assets and liabilities. Mr. Martinez responded by suggesting that the parties be allowed to make alternating choices of the antiques. Ms. DeMontluzin simply asked that the trial judge give her all the antiques. The trial judge therefore chose to make the decisions himself. He simply went down the list, giving five pieces to the husband, then five to the wife, until all the antiques were allocated, without any consideration of relative value or of the location of the antiques. We agree with Ms. DeMontluzin's contention that this action was arbitrary and capricious, having no basis in law. Although the trial judge has much discretion to allocate the property as he sees fit, that discretion does not extend to making arbitrary, capricious decisions such as this.
A study of the community property division reveals that the total value of the antiques divided by the trial judge was $67,180. The value of the antiques allocated to Mr. Martinez totalled $26,345, while the value of those given to Ms. DeMontluzin was $40,835. Therefore, the trial judge's division was not even remotely equal. Most of the antiques are located at the St. Charles Avenue house, but a few of them were located that the Veronese Road camp occupied by Mr. Martinez. The trial judge apparently did not even take this fact into account in dividing the community, as he gave Ms. DeMontluzin half of the antiques already located at Mr. Martinez's residence, as well as giving Mr. Martinez half of those located at his ex-wife's residence.
As stated above, LSA-R.S. 9:2801(4)(c) provides that the following should be considered in deciding which spouse should receive community property: (1) the nature and source of the asset, (2) the economic condition of each spouse and (3) any other circumstances the court deems relevant. All of the relevant considerations in the instant case indicate that Ms. DeMontluzin should receive the antiques owned by the community, except for those located at Mr. Martinez's residence. Therefore, we further amend the judgment of the trial court to award Ms. DeMontluzin all the antiques, except the following:

Louis XV style refactory table $2,500
Louis XIV daybed 350
"Bruns Matheson" Chaise 400
Custom made wool rug 150
Pair Carl Spring Lagner table 450
Small Bukara rug 200
Lounge chair and ottoman 125
Large Lawson sofa 250
Rocker chair 65
Pair black iron chairs 100
Abstract painting 450
Misc. pewter plates, etc. 175
12 folding deck chairs 200
Queen size bed and spread 150
Pair Chinese lamps 175
Italian walnut end table 500
Bowfront mahogany chest 475
Dressing mirror 175
Danish chair 25
Bunk beds 200
Horse painting 400
Italian walnut table 400
Apt. glass lamp 150

*675
Set of ironstone china $ 150
Pair twig chairs 30
Concrete table 25
______________ _______
TOTAL VALUE $8,270

The antiques listed are awarded to Mr. Martinez. All other antiques, totalling $58,910 in value, are allocated to Ms. DeMontluzin. These changes are reflected in the recapitulation at the end of this opinion.
Merrill Lynch Account
In addition to the interest in the house discussed in the above section, Mr. Martinez also inherited a number of stocks and bonds when his mother died in 1969 and when his father died in 1971. When the couple moved back to New Orleans in 1974, he opened an account at Merrill Lynch. Thereafter, numerous transactions occurred in the account, including the apparent infusion of large sums of community funds. Additionally, after 1980, Mr. Martinez retained dividends and interest earned on the account, also community funds. At trial, he presented an accounting and attempted to prove that the infusion of community funds was justified by the fact that he had withdrawn large sums of money from the account to place in a community account for "general operating" expenses. The trial judge found that the account was community, although he stated that he felt Mr. Martinez had obviously tried to keep good records and maintain the account's separate status. The judge's decision was based on his finding that Mr. Martinez commingled the stock account to such an extent that it had lost its separate property status. Mr. Martinez contests that finding on appeal.
Mr. Martinez claims that he originally opened the account with Merrill Lynch in Belgium in 1971, right after he inherited the stock from his parents. He says he simply transferred a previously-existing account to New Orleans after his move. However, there are no records of the account prior to the move in 1974. Mr. Martinez also claims that his testimony at trial establishes that he only reinvested capital gains when the community owed him money because he had withdrawn money from the account for community purposes.
Ms. DeMontluzin points out in brief that the Mr. Martinez testified that he opened the account in 1974 with "$17,418.20 cash and inherited stock." Mr. Martinez inherited no cash when his parents died, but claims that the money came from the sale of European stocks which were not tradeable in this country. Additionally, Ms. DeMontluzin attempted to prove at trial that the account opened in 1974 simply did not "match up" with the stocks Mr. Martinez inherited from his parents.
Generally, as stated above, property owned by married persons is presumed to be community property. The burden of overcoming that presumption is placed on the party alleging its separate character, in this case Mr. Martinez. Emerson v. Emerson, 322 So.2d 347 (La. App.2d Cir.1975); Succession of Hyde, 281 So.2d 136 (La.App.3d Cir. 1973), aff'd 292 So.2d 693 (La.1974). In order to satisfy that burden, the party must prove that the property was acquired and paid for with separate funds. Id. That proof must be strict, clear, positive and legally certain.
Id.
Given that very strict, difficult standard, we find that the trial court was correct in holding that the testimony of Mr. Martinez was insufficient to overcome the presumption of community. Finding no manifest error in his ruling, we affirm the trial court's decision on this ruling.
Because of our decision on this issue, it is unnecessary for us to consider Mr. Martinez's argument that the Veronese Road camp, admittedly purchased and built with funds from the Merrill Lynch account, should have been classified as separate. We affirm the trial court's decision classifying that property as community.
Permanent Alimony
After partitioning the community property, the trial judge found that Mr. Martinez owed Ms. DeMontluzin a total of $263,901.26 in compensating cash, payable in two installments. He ordered Mr. Martinez to pay temporary permanent alimony of $2,500 per month until he made the first payment, then $1,400 per month until the *676 second payment was made, and $1,200 per month thereafter. He contests the permanent alimony award, claiming that Ms. Martinez is able to earn plenty of money in her informal antique business. He extensively briefs her purchases and earnings and claims that there is no need for the alimony award. He cites the Supreme Court's decision in Teasdel v. Teasdel, 493 So.2d 1165 (La.1986), in which the court stated that "permanent alimony is a pension which is designed to prevent a former spouse from becoming a public charge." He also cites Hartman v. Hartman, 534 So.2d 1335 (La.App. 4th Cir.1988), in which the court indicated that "maintaining `lifestyles' " is not the goal of permanent alimony.
Ms. DeMontluzin claims that all the events cited by her former husband occurred more than eight years prior to trial. She claims that she is no longer able to earn any money from her alleged informal business because New Orleans is a very depressed antique market. She claims that the only money she receives is $400 per month for some municipal bonds and $196 per month from a certificate of deposit. She alleges that the permanent alimony award, which will eventually decrease to $1,200 per month, is proper.
La.C.C. art. 160 provides, in pertinent part, as follows:
A. (1) When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income....
(2) In determining the entitlement and amount of alimony after divorce, the court shall consider:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;
(f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant
(3) In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
In setting the permanent alimony award, the trial judge found that Ms. DeMontluzin is able to earn "some uncertain amount of money from the buying, selling and appraising of antiques." Our decision reversing the trial judge's allocation of the house to Mr. Martinez makes it unnecessary for us to decide whether she could earn enough in the antique business to support herself. The record indicates that the lower apartment in the house earns $1,500 per month in rent. The mortgage note is $507, leaving Ms. DeMontluzin a balance of almost $1,000 per month for living expenses. The trial judge's permanent alimony award for $1,100 is no longer necessary since Ms. DeMontluzin has not shown a need for more than $1,000 per month for living expenses. The record does not reveal any outstanding financial obligations and there are no dependant children, so those things are not relevant considerations. Although Ms. DeMontluzin is in her fifties, there has been no showing of any health problems. Therefore, we reverse that portion of the judgment awarding Ms. DeMontluzin permanent alimony.
Miscellaneous Issues
The parties contest the trial judge's judgment concerning the existence and/or valuation of items in the community. Apparently, Ms. Montluzin prepared the first tableau of the property. She later had an appraiser prepare another tableau, in which the value of the property was estimated at a much lower price. The court made a list at some time and so did Mr. Martinez. The trial judge ultimately listed everything and *677 assigned it a value, apparently relying greatly on Ms. DeMontluzin's appraiser for assigning values to the antiques. We find no manifest error in any of his valuation. Ms. DeMontluzin's appraiser's figures were lower than those on the other lists. However, his figures were also the most recent. The trial judge also listed a group of things which he found were either non-existent or were the separate property of the party in whose possession they were found. Again, a close reading of the record reveals no manifest error in this decision.
There is also a conflict concerning a possible $30,000 community debt to the parties' daughter, Margot. Mr. Martinez claims it is owed; Ms. DeMontluzin claims that it is not. The record reveals no credible evidence of the existence of such a debt. The trial court's decision on this issue is affirmed.
Finally, Mr. Martinez contests the values assigned to several insurance policies, a certificate of deposit and New Orleans Country Club stock. The briefing on these issues is minimal. We find no manifest error in the trial court's decision on these items.
Because of our decision to give Ms. DeMontluzin the house and the majority of the antiques, the new community property division would be very unequal and Ms. DeMontluzin would be required to make a very large compensating payment unless we make other adjustments. La.C.C.P. art. 2164 gives an appellate court the authority to render "any judgment which is just, legal, and proper." Therefore, in order to minimize hardship to the parties, we have reallocated some of the financial resources of the community to Mr. Martinez in an attempt to equalize the community as much as possible and minimize the compensating payment. The recapitulation below reflects all adjustments to the trial court's community property partition. Some items are summarized. Any item not changed in the summary below or discussed in the body of this opinion remains allocated as the trial court indicated.
Conclusion
For the above and foregoing reasons, the trial court's judgment is reversed concerning the classification of the matrimonial domicile as one-third the separate property of Mr. Martinez and two-thirds community property. We also reverse the judgment awarding Ms. DeMontluzin permanent alimony. The judgment is amended to classify the St. Charles Avenue house as community property, subject to Mr. Martinez's reimbursement claim and to allocate the house to Ms. DeMontluzin. The judgment is further amended to reflect the amendments concerning allocation of antiques and other assets. The judgment is further amended to reflect the necessary changes in the community accounting as detailed in this opinion. In all other respects, the judgment of the trial court is affirmed. The following is a recapitulation of the amended community property partition.

 ALLOCATED TO ALLOCATED TO
 ROBERT T. KATHERINE
 ITEM VALUE MARTINEZ DEMONTLUZIN
House, 6007-009 St. Charles Avenue $456,000.00 $456,000.00
Camp, 4541 Veronese Road 80,000.00 $ 80,000.00
Merrill Lynch Account No. XXX-XXXXX.
 Balance, April, 1985 55,296.17 55,296.17
Shreveport bond as of 23 April, 1985 6,325.00 6,325.00
Certificate of Deposit No. 3134,
 Guaranty Savings 31,174.86 31,174.86
Proceeds from sale of Lot 10,
Square 31, Venetian Isles 14,648.55 14,648.55
Lykes Pension Plan Sims Formula
Life Insurance Policies:
 Connecticut General 7,375.27 7,375.27
 Pan American Life 8,185.20 8,185.20
 Mutual Life 3,955.53 3,955.53

*678
Merrill Lynch Ready Assets
 Trusts Account No. 063-594
 50651-1 $ 10,875.49 $ 10,875.49
Merrill Lynch No. 59481930 223,000.00 $223,000.00
Lykes Capital Accumulation Plan 39,405.93 39,405.93
One (1) 1977 Volvo Automobile 1,600.00 1,600.00
Gun collection 1,260.00 1,260.00
Stock in New Orleans Country
 Club 33,000.00 33,000.00
One (1) boat 1.00 1.00
Balance of the 20,000 Taylor note 16,020.00 16,020.00
Reimbursements
(itemized in trial court's
 judgment 66,329.00 56,044.00 10,285.00
Antiques 67,180.00 8,270.00 58,910.00
________________________________________________________________________________
TOTAL ASSETS $1,121,632.00 $556,610.71 $565,021.29
Mortgage on House, 6007-6009
 St. Charles $ 39,290.98 $ 39,290.98
________________________________________________________________________________
TOTAL LIABILITIES $ 39,290.98 $ 39,290.98
TOTAL ASSETS $1,121,632.00 $556,610.71 $565,021.29
TOTAL LIABILITIES 39,290.98 39,290.98
________________________________________________________________________________
NET COMMUNITY $1,082,341.02 $556,610.71 $525,730.31
TOTAL COMMUNITY DUE $541,170.51 $541,170.31
 ($1,082,341.02/2)
ADJUSTMENT FOR REIMBURSEMENT + 15,000.00 - 15,000.00
________________________________________________________________________________
TOTAL DUE $556,170.51 $526,170.51
MR. MARTINEZ'S COMPENSATING
 PAYMENT $556,610.71
 556,170.51
 _____________
 $ 440.20

AFFIRMED IN PART; REVERSED IN PART; AMENDED.
NOTES
[1] An en banc panel of this court reconsidered the principles enunciated in Albright, supra, in light of the facts of this case. A majority of the court voted to uphold Albright. The members of this panel, however, consider Albright an anomaly and voted to overrule it. The fact that we were unable to convince the rest of the court of that necessity does not affect our decision in this case because the two cases are distinguishable.