557 So.2d 1026 (1990)
Dale Sierra STARR
v.
Richard M. STARR.
No. 89-CA-0431.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1990.
*1027 Lowe, Stein, Hoffman & Allweiss, Robert C. Lowe, Edith H. Morris, Suzette Marie Smith, New Orleans, for plaintiff-appellee Dale Sierra Starr.
D. Douglas Howard, Jr., Leslie A. Bonin, New Orleans, for defendant-appellant Richard M. Starr.
Before GARRISON, KLEES and BECKER, JJ.
KLEES, Judge.
Richard M. Starr appeals suspensively from the April 6, 1988 judgment partitioning the community of acquets and gains that formerly existed between him and Dale Sierra Starr. Richard Starr raises five issues on appeal; in her answer to the appeal, Dale Starr contravenes those claims and raises four new issues. After reviewing the record, we affirm the judgment of the trial court in part and remand to that court for certain modifications, as explained herein.
The first claim made by Richard Starr is that the trial court erred in assigning a gross rather than a net value to a check received by him after the termination of the community for work performed during the existence of the community. Mr. Starr argues that the court erred by failing to subtract any overhead from the face value of the check, $21,969.00. We find no *1028 merit in appellant's argument. Although he received the check after the termination of the community, presumably the business expenses he incurred to earn the commission were paid during the time the work was performed. Moreover, Mr. Starr presented no proof as to the exact amount of overhead expended during the period of time represented by this commission; nor did he show that he actually paid any business expenses out of this check. Rather, the entire check was placed into his personal account after the termination of the community. Under the circumstances, the trial court was correct in considering the commission check as income earned during the existence of the community.
Mr. Starr next argues that the trial court erred by valuing his contract with Zapata Industries at $43,938. This contract, a community asset, is an exclusive contract to sell bottle caps. The trial judge arrived at the value by applying a multiplier of two to the amount of Mr. Starr's commission for the month of August 1985, the last month prior to the termination of the community. Mr. Starr argues that by applying this formula, the trial court improperly valued the asset at the termination of the community, rather than at the time of trial as is required by R.S. 9:2801(4)(a). According to Mr. Starr, the asset has been steadily depreciating since the termination of the community and was worth no more than $23,926 at the time of trial.
Conversely, Dale Starr, who has also appealed this point, asserts that the contract should have been assigned a value of at least $150,000, which is the value reflected on the company's books and income tax returns for the last five years of the community. She argues that value of the contract, which has been in Mr. Starr's family for over twenty years, surpasses the monthly commissions generated by it.
Although we agree that community assets must be valued at the time of trial, the law provides no mathematical formula for determining the value of a contract such as this. The value set by the trial ccourt, $43,938, adequately reflects the fact that the contract had depreciated steadily and at the time of trial, was no longer worth what it had been in prior years. We find no manifest error in the trial court's decision in this regard.
Mr. Starr's third complaint is that the trial court erred by classifying six shares of Starr Properties stock acquired by him during the existence of the community as community property. He argues that the stock is his separate property because he purchased it at a time when he was not receiving a salary from Starr Properties, but was taking money owed to him personally by the company. Therefore, he claims the stock was purchased with separate funds and is his separate property. We disagree. Mr. Starr offered no proof other than his statement at trial that he acquired the stock with separate funds. Things acquired during the existence of the community are presumed to be community assets; it must be shown by clear and convincing evidence that such property is separate. Succession of Hyde, 281 So.2d 136 (La.App. 3rd Cir.1973). We find no manifest error in the trial court's conclusion that Mr. Starr did not overcome the presumption of community attached to these shares of stock.
Next, Mr. Starr argues that the trial court erred by classifying the interest in Professional Court acquired by Dale Starr during the existence of the community as a community asset. He argues that because this interest was totally acquired with funds given to Dale by her mother, it is Dale's separate property, and the court should not have allowed her reimbursement for separate funds she invested in this interest. Despite this argument on appeal, Mr. Starr testified at trial that the interest in Professional Court was community property; it was also classified as community property on the descriptive list filed by Mr. Starr. In view of his testimony at trial, we do not find the trial court's classification of Professional Court as community property to be manifestly erroneous.
Finally, Mr. Starr complains that the trial court should not have offset his *1029 reimbursement for mortgage notes paid on the family home after he and Dale separated by the rental value of the home during the time period between the separation and the partition of the community. The record reflects that Richard Starr had exclusive use of the home during this period. In such a case, the trial court has discretion to charge the spouse who occupies the home the fair market rental value of the domicile owned by the former community. Landwehr v. Landwehr, 547 So.2d 752, 756 (La. App. 4th Cir.1989). The trial judge charged Richard Starr with rent in the amount of two-thirds of the monthly mortgage payment on the house, which we find reasonable. There is no manifest error in the trial court's decision.
Besides her opposition to the points raised by Richard Starr, Dale Starr asserts that the trial court erred in several other areas. Primarily, she argues that the trial court incorrectly allowed Mr. Starr $64,341 in reimbursements for various community debts he paid with money drawn from Starr Properties during a time when he was not receiving a salary, but was taking repayment of money given to him by his father and then loaned to the company. Dale Starr argues that Richard Starr failed to overcome the presumption of community with regard to these funds, and that these were actually monies earned by him during the community. At trial, Richard Starr testified that he had elected to stop drawing a salary during this time in order to get out of Starr Properties the money owed to him. His testimony is corroborated by the fact that these amounts were listed on the company books and tax returns as money owed to Richard Starr. In addition, Mr. Starr did not claim this money as income on his own tax return, but as return of capital. In view of the evidence, we cannot say that the trial court committed manifest error by allowing the reimbursements.
Secondly, Dale Starr argues that the trial court erred by allowing Richard Starr reimbursement for rents he paid after July 1, 1985 on the Sweat Shop, a community enterprise offering fitness and exercise classes. Dale Starr claims that she verbally gave Richard Starr the Sweat Shop prior to the termination of the community and that he operated it as his separate property after July 1, 1985. We find no merit in this argument. Although the law permits a spouse to donate his interest in a community asset to the other spouse La.Civil Code art. 2343, donations must be in proper form. A verbal donation of such an enterprise as the Sweat Shop does not comply with the law. La.Civil Code art. 1538. Therefore, the trial court did not commit manifest error by allowing Mr. Starr reimbursement for rents paid on the Sweat Shop.
Next, Dale Starr contends, as she did in her Motion for New Trial, that the trial court incorrectly set the amount of the community obligation on the Jaguar automobile at $10,000 rather than $18,000. The record reflects that the principal amount due First National Bank of Commerce on the automobile was $18,200. Six days after the termination of the community, the automobile was apparently sold at a sheriff's sale for $10,000. The amount of the deficiency due the bank, including interest ($1,611.52), attorney fees ($4,952.88), court costs and sheriff's commission ($1,386.31), was $16,150.71. We find that the trial court erred by not holding the amount of this deficiency, $16,150.71, to be the value of the community obligation. Therefore, the judgment of partition must be modified to reflect this figure.
Finally, Dale Starr asserts that the trial court erred by failing to stipulate in the judgment that she is entitled to certain movables belonging to the former community that are currently being stored in the Starr Properties warehouse. Mr. Starr admitted at trial that he did not want these items, and his counsel reiterated this fact during the oral argument on the appeal. Since both parties agree on this point, we amend. The judgment of partition to include this stipulation.
Accordingly, we remand this matter to the trial court solely for the purpose of modifying its judgment with respect to the value of the community obligation on the Jaguar and the designation of the movables *1030 in the Starr Properties warehouse, to belong to Dale Starr. In all other respects, the judgment of partition is affirmed.
MODIFIED AND REMANDED.