583 So.2d 125 (1991)
Wanda Scheuerman HINCKLEY
v.
Norbert Reynaud HINCKLEY.
No. 89-CA-2215.
Court of Appeal of Louisiana, Fourth Circuit.
June 27, 1991.
Rehearing Denied August 27, 1991.
Philip R. Riegel, Jr., New Orleans, for plaintiff-appellee.
Joseph V. Bologna, New Orleans, for defendant-appellant.
*126 Before KLEES, BYRNES and WILLIAMS, JJ.
BYRNES, Judge.
Norbert Reynaud Hinckley appeals a judgment of partition of property following a judgment of divorce. We affirm as amended.
Norbert Reynaud Hinckley and Wanda Scheuerman Hinckley were married in 1947. Their divorce was granted on June 10, 1987. Thereafter, the trial court filed a judgment of partition on August 25, 1989, as well as an amended judgment regarding an earlier transfer of stock on October 23, 1989. Mr. Hinckley appeals the judgment of partition, contending that the trial court erred in finding that: (1) certain oil and gas interests were the separate property of Ms. Hinckley; (2) an interest in property which Mr. Hinckley acquired from his brother, Richard Hinckley, was community property; (3) stock which Mr. Hinckley donated to Ms. Hinckley was her separate property; and (4) various assets claimed to be Mr. Hinckley's separate property were community.
Mr. Hinckley argues that oil and gas royalties from mineral leases in Pointe Coupee Parish, which Ms. Hinckley acquired by donation from her family during the marriage, fell into the community of acquest and gains because Ms. Hinckley failed to record her declaration reserving the royalties as her separate property in the public records of Pointe Coupee Parish where the property was located. In June, 1980, Ms. Hinckley executed and recorded the declaration in East Baton Rouge Parish, the matrimonial domicile. At the time of the declaration, La.C.C. Art. 2386 had been substituted by LSA-C.C. Art. 2339, which became effective on January 1, 1980. A few months later Article 2339 was changed to include royalties among the fruits that fell into the community, effective September 12, 1980.
Originally LSA-C.C. Art. 2386 provided in pertinent part:
The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquest and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a Notary Public and two witnesses and duly recorded in the Conveyance Records of the Parish were the community is domiciled.
On January 1, 1980, the new matrimonial regimes legislation, enacted in 1979, came into effect. Louisiana C.C. Art. 2339, applicable when Mrs. Hinckley executed and recorded her declaration, read in pertinent part as follows:
The natural and civil fruits of the separate property of a spouse and bonuses, delay rentals, and shut-in payments arising from mineral leases are community property. Nevertheless, a spouse may reserve them as his separate property by a declaration made in an authentic act or in an act under private signature duly acknowledged by the spouses.
As to the fruits and proceeds of immovables, the declaration is effective when filed for registry in the conveyance records of the parish in which the immovable property is located. (Act 1979, No. 709, § 1, eff. Jan. 1, 1980).
The amended version of LSA-C.C. Art. 2339, which became effective September 12, 1980, provides in pertinent part:
The natural and civil fruits of the separate property of a spouse, minerals produced from or attributable to a separate asset, and bonuses, delay rentals, royalties, and shut-in payments arising from mineral leases are community property. Nevertheless, a spouse may reserve them as his separate property by a declaration made in an authentic act or in an act under private signature duly acknowledged.
As to the fruits and revenues of immovables, the declaration is effective when filed for registry in the conveyance *127 records of the parish in which the immovable property is located. As to the fruits of movables, the declaration is effective when filed for registry in the conveyance records of the parish in which the declarant is domiciled. (Emphasis added.)
Prior to the enactment of LSA-C.C. Art. 2339 in effect from January 1, 1980 until September, 1980, royalties were classified as fruits falling into the community of acquest and gains. Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679 (La. 1952). At the time of the declaration, royalties were not classified as fruits in Art. 2339. That article was amended to include royalties as fruits effective September 12, 1980. "The classification of royalties and in kind mineral payments attributable to separate property from January 1, 1980 until September 12, 1980, were separate property without the necessity of the Article 2339 declaration." Spaht, Developments in the Law of Matrimonial Regimes, 42 La.L.Rev. 347. There was no requirement to record the declaration in Pointe Coupee Parish where the mineral interests were located in June of 1980. The trial court properly found that the mineral royalties were the separate property of Mrs. Hinckley.
Mr. Hinckley contends that the lot located at 2815 Jefferson Avenue in New Orleans is his separate property. The former husband inherited one-half interest in the house from his mother, Mrs. Inez Reynaud Hinckley, in 1963. By act of sale on March 12, 1965, appellant's brother, Richard A. Hinckley sold to Norbert Reynaud Hinckley his one-half interest in the house. The trial court found that 50 percent of the property is the separate property of Norbert Hinckley and the remaining 50 percent is community property. The trial court ordered the lot to be sold with 50 percent of the proceeds to be split between the parties.
Mr. Hinckley argues that the interest acquired in the first transaction after the judgment of possession in a succession of an ancestor amounts to a partition of the asset and the purchaser merely adds to his separate property which he already owns. Tullier v. Tullier, 464 So.2d 278 (La.1985); Katz v. Katz, 423 So.2d 1277 (La.App. 4th Cir.1982), writ denied 427 So.2d 860 (La. 1983); Wood v. Wood, 424 So.2d 1143 (La. App. 1st Cir.1982). However, aside from his own testimony, Mr. Hinckley failed to provide any records showing that he purchased his brother's interest with his separate funds. He noted that his salary for employment as a chemist was minimal and that Mrs. Hinckley was not employed. Therefore, he asserts that purchase of his brother's interest in the house was paid by Mr. Hinckley's separate funds inherited from his mother.
The party asserting the separate nature of the property acquired during the marriage has the burden of overcoming the strong presumption in favor of the community. LSA-C.C. Art. 2340; Tullier v. Tullier, id. To meet this burden, the proof must be clear, positive and of a legally certain nature that the property was separate instead of community. Allbritton v. Allbritton, 561 So.2d 125 (La.App. 3d Cir. 1990), writ denied, 565 So.2d 445 & 565 So.2d 454 (La.1990).
Mrs. Hinckley argues that the deed failed to contain the husband's double declaration which would allow him to prove that the property was acquired with separate funds. Although jurisprudence at the time of the purchase required the husband's double declaration in the act of sale for the husband to prove the property was separate, that rule has been overruled. Retroactive application of the statute abolishing the double declaration rule allows the husband to provide proof that the property is separate. LSA-C.C. 2340; Tullier v. Tullier, id.
In Allbritton v. Allbritton, id., the appellate court found that the former wife failed to carry her burden of proving certain gifts were separate property without evidence other than her self-serving testimony. The former husband's unsubstantiated, uncorroborated testimony that he used funds given to him by his mother was insufficient to overcome the presumption that property in his separate name was community, despite his claim that he was *128 not earning enough at the time to have purchased the property with community funds because his minimal earnings were being used to support the family in Ziegler v. Ziegler, 537 So.2d 1207 (La.App. 4th Cir.1989).
In the present case Mr. Hinckley failed to establish that he purchased the property with separate funds by evidence other than his own testimony. We agree with the trial court's determination that the community has a 50 percent interest in the property. However, in Curtis v. Curtis, 403 So.2d 56 (La.1981), the Louisiana Supreme Court reaffirmed the principle of Louisiana law that when separate and community funds, even though distinguishable and not commingled, are used in making up the consideration paid for property acquired during the existence of the community, the property so purchased becomes community property although the community may be indebted to the separate estate for the amount of separate funds used in making the purchase. Martinez v. Martinez, 556 So.2d 668 (La.App. 4th Cir.1990), writ denied 560 So.2d 23 (La.1990). In Albright v. Albright, 521 So.2d 498 (La.App. 4th Cir.), writ denied, 522 So.2d 571 (La.1988), the former wife's mother had bequeathed her one-half interest in certain real property to her two daughters. Thereafter, the property was sold by the co-owners through a homestead to the co-owners and their husbands with the homestead retaining a mortgage and vendor's lien. In Albright, id., this court affirmed the trial court's decision in a divorce partition, characterizing the former wife's ownership of one-fourth interest in the property as her separate property and one-fourth interest in the property belonging to the community existing between the former husband and wife. This court held that the sale-resale to the mortgage company for the purpose of giving the mortgage company a vendor's lien does not change the character of the property. This court found no evidence that the former wife intended to donate her separate interest to the community.
The Martinez decision distinguished the holding of Albright and other sale-resale cases where the parties did not gain any additional property as a result of the saleresale. In Martinez, id., the former husband had inherited one-half interest in his family home in naked ownership in indivision with his brother and sister when his mother died. Later, the former husband and his siblings inherited the other half of the property when the father died. Thereafter, the other two-thirds interest was purchased by the community from the former husband's siblings and the mortgage payments on the entire property were made with community funds. This court determined that the evidence showed that the entire parcel was treated as community from the time the mortgage was signed and reclassified the property as community because it was purchased with separate and community things and the value of the community things was not inconsequential in comparison to the separate things. LSA-C.C. 2338 and 2341. Mr. Martinez was entitled to one-half the value of his separate property used to acquire the community property under LSA-C.C. Art. 2367 but owed no reimbursements for improvements since none of the property belonged in his separate estate. This court allocated the property to Mrs. Martinez based on evidence that she had made renovations primarily with her separate money and expressed interest in living in the home.
Property which has been paid for partly with separate funds and partly with community funds cannot be considered mixed; the property must be classified as either separate or community. Curtis v. Curtis, id. Because 50 percent interest in the house is classified as community property, the Jefferson Avenue property is classified as community. Therefore, we affirm the trial court's order that the lot be sold with 50 percent of the proceeds to be split between the parties, thereby giving 75 percent of the proceeds of the sale to Mr. Hinckley because Mr. Hinckley has a right to reimbursement for one-half of the proceeds for his separate portion and onefourth as his interest in the community portion.
*129 Mr. Hinckley contends that stock consisting of his separate property, shares of Whitney Bank, Phillips Petroleum and Exxon Corporation which he donated to Ms. Hinckley during the marriage, were transferred to avoid estate taxes. Because his intention was to benefit the family, he argues that because the stocks were inherited or were purchased with his separate funds which he inherited, the stocks should be designated as his separate property.
At trial Mr. Hinckley presented an accounting and attempted to prove that the shares of stock could be traced as his separate property. The former wife did not dispute that originally they may have been his separate property; however, she asserts that he intended to give them to her as evidenced by donations inter vivos. Mr. Hinckley filed gift tax returns. Mrs. Hinckley claimed that he gave her stocks after their second child was born and later when he gave her stocks in 1962, she wanted something in her name after being married twenty-one years. Mr. Hinckley testified that he gave gifts on several occasions during the marriage to his children as well as to his former wife. Mr. Hinckley stated that he knew that the stocks were hers legally but not morally. The husband's testimony does not constitute clear, positive and legally certain evidence to establish that the stock was his separate property. Starr v. Starr, 557 So.2d 1026 (La. App. 4th Cir.1990); Ziegler, id., Breaux v. Breaux, 555 So.2d 1001 (La.App. 3rd Cir. 1990). Because we conclude that the shares of stock were donated to Ms. Hinckley, they are classified as her separate property.
Mr. Hinckley further complains that shares of stock and accounts in his portfolio are his separate property and not community as determined by the trial court. Both Mr. Hinckley and his brother Richard Hinckley testified that Mr. Hinckley inherited the stock or bought stock from sales of inherited stock in the St. James Bank & Trust Company and from F. Reynaud Corporation. He and his brother testified that clearly he inherited the interest and stocks from his mother and aunt. Mr. Hinckley noted that Mrs. Hinckley came into the marriage with no money and had no separate income. Mr. Hinckley traced transactions showing they were initially purchased with his separate funds. However, Mr. Hinckley admitted that payments received from the sale of F. Reynaud Corporation stock to Jan Industries were composed of principal and interest. The interest payments generated were retained in the accounts and commingled. Proof that property is separate and not community must be strict, clear, positive and legally certain. Martinez, id., 556 So.2d at 675. Where separate and community funds are commingled indiscriminately so that separate funds cannot be identified or differentiated from the community funds, all the funds are characterized as community funds. Ziegler, id., 537 So.2d at 1209. Based on the evidence presented we find that the trial court did not commit manifest error in determining that the various assets in Mr. Hinckley's portfolio were community property.
We amend the judgment of the trial court by classifying the Jefferson Avenue property as community. However, this classification does not alter the trial court's determination as to portions designated to the parties in dividing the proceeds of the sale of the Jefferson Avenue property. For the foregoing reasons, the judgment of the trial court is affirmed as amended.
AFFIRMED AS AMENDED.