830 So.2d 328 (2002)
Roger P. SHARP
v.
Alta Williams SHARP.
No. 2001-CA-0969.
Court of Appeal of Louisiana, Fourth Circuit.
October 2, 2002.
Rehearing Denied December 2, 2002.
*329 Philip R. Riegel, Jr., New Orleans, LA, for Plaintiff/Appellant.
Jill E. Leber, Covington, LA, and Marshall G. Weaver, Henican, James & Cleveland, Metairie, LA, for Defendant/Appellee.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, Judge PATRICIA G. MURRAY, Judge DENNIS R. BAGNERIS, SR., Judge TERRI F. LOVE).
Judge STEVEN R. PLOTKIN.
Plaintiff, Roger P. Sharp, appeals the trial court's decision granting community property reimbursement claims to Alta Williams Sharp for monies she received from her separate inheritance and the assigning of ownership of the gold wedding ring to Alta. For the reasons discussed below, we reverse in part and affirm in part the ruling of the trial court.
REIMBURSEMENT CLAIM
This case arises out of a divorce and division of community property between Roger P. Sharp and Alta Williams Sharp.[1] On December 22, 2000, the trial court partitioned the community and granted reimbursement claims in favor of Alta Sharp and against Roger Sharp. The trial judge further declared, among other rulings, that all monies received from the sales of the land and timber inherited by Alta Sharp and sold between 1985 and 1996 to be the separate property of Alta Sharp. The judge ordered that Alta shall receive 50% of the value of her separate property at the time it was used. The only witnesses who testified were Roger P. Sharp and his daughter, Holly Sharp. Alta Williams Sharp did not testify.
Holly Sharp testified that during their marriage Alta Sharp allegedly inherited land, timber, and stock from her father that was received between 1985 and 1996. Ms. Sharp claimed to have inherited a piece of land that was sold to Wal-Mart with the proceeds being divided between her and her siblings. Holly testified that she prepared her parents' tax returns for the years 1985-1996. She provided copies of some of the returns that she possessed and they were introduced into evidence. The missing tax returns were never produced. Holly further testified to the specific sales that occurred. In 1985 there was a sale of 100 acres for $129,976, a sale of a right of way for $16,400 and a piece of land sold for $13,430. Holly stated that in 1989 there was a timber sale in the amount of $1,107 and a land sale in Pearl River for $620 in 1990. In 1992 there was a land sale for $134,241; in 1993 a land sale for $91,903; in 1996 a bank stock sale of $12,750. Holly testified that her mother *330 owned the stock. According to Holly's testimony, in 1995 there was a sale by her mother to Wal-Mart for between $200,000 to $225,000 of which $100,000 was invested separately for Alta.[2]
Roger Sharp claims that although Alta's reimbursement claims were allowed by the trial court, Alta failed to meet the burden of proof required to establish reimbursement claims. Civil Code art. 2365 provides in pertinent part:
If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
The other relevant article is Civil Code art. 2367 which states:
If separate property of a spouse has been used for the acquisition, use, improvement, or benefit of community property, that spouse upon termination of the community is entitled to one-half of the amount or value that the property had at the time it was used. The liability of the spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community but either spouse may prove that they are separate property. La. C.C. art. 2340. When either spouse lives in the state, as is the case here, upon the termination of the community, the "rights and obligations of the spouses with regard to immovables situated in another state acquired during marriage by either spouse while domiciled in this state, which would be community property if situated in this state, shall be determined in accordance with the law of this state." La. C.C. art. 3525.
This Court has held that the party asserting the separate nature of the property acquired during the marriage has the burden of overcoming the strong presumption in favor of community. Hinckley v. Hinckley, 583 So.2d 125, 127 (La. App. 4 Cir.1991). The standard of proving that an asset is separate is strict, clear, positive and legally certain. Martinez v. Martinez, 556 So.2d 668, 675 (La.App. 4 Cir.1990). The burden of proof is on the party claiming the reimbursement to show that separate funds existed and that those funds were used for the use or benefit of the community. Sherrod v. Sherrod, 97-907 p. 7 (La.App. 5 Cir. 3/25/98), 709 So.2d 352, 356. "The mere mixing of separate funds and community funds in a bank account does not alone convert the entire account into community property. However, when separate funds are commingled with community funds indiscriminately so that the separate funds cannot be identified or differentiated from the community funds" all the funds are characterized as community. Biondo v. Biondo, p. 11 99-0890 (La.App. 1 Cir. 7/31/00), 769 So.2d 94, 103 citing Curtis v. Curtis, 403 So.2d 56, 59 (La.1981).
Roger argues that Alta did not meet her burden of proving the separate nature of the property since the only testimony offered was that of their daughter, Holly. Roger further contends that even if all of *331 the land in question was separate property, Alta did not show that these proceeds were used to pay community obligations or for the benefit of community property. Roger also correctly points out that if $100,000 of the proceeds from the Wal-Mart sale was invested separately for Alta, this would be her separate property and no reimbursement would be due on the stock purchased with this money.
Alta argues, through her daughter, that the trial court's judgment should not be reversed since the trial judge was in the best position to assess the credibility of the witnesses. The classification of property is a factual determination, which cannot be overturned by an appellate court absent a showing that the trial court was clearly wrong or manifestly erroneous. Purcell v. Purcell, 29,663 (La.App. 2 Cir. 6/23/97), 697 So.2d 728. Alta claims that the trial judge was correct in holding that most of the parties' income for the 1985 to 1996 time period resulted from the sale of Mrs. Sharp's inherited property. During this time period the parties were receiving social security and disability benefit income. Thus it was necessary to sell her separate property in order to pay for the upkeep of their Garden District home since the social security and disability was insufficient.
We find that the trial judge in the instant case was clearly wrong in her classification of the separate property and the use of the proceeds from the sale of the property, based on the record evidence. The hearsay evidence presented at trial was insufficient to prove the source of the money received. Given the commingling of funds that may be both separate and community, Alta has failed to properly show how the funds were used by the parties to entitle her to reimbursement. Thus, it cannot be determined if the funds in the various bank and investment accounts was separate property or community property, so the presumption is that they are community property. The tax returns from these years in question are insufficient to make a determination of the reimbursement claim.
WEDDING RING
Roger claims that a gold wedding ring that belonged to his deceased mother was his separate property and should be returned to him. It is undisputed that Alta had been wearing the ring for many years. Roger contends that the ring was never a gift to Alta. He testified that his wife was sick and got very thin so her wedding and engagement rings had fallen off her finger. According to Roger, his mother told Alta in reference to the ring in question, "I have something that might hold on it, and why don't you wear this."
Roger admits that Alta wore the ring for fifteen years and that the ring was not part of his mother's succession. The trial judge was correct, that the ownership of the gold wedding ring that Mrs. Sharp wore for 15 years is sufficient to prove that it was a manual gift to her from her mother in law.
CONCLUSION
Accordingly, we reverse the decision of the trial court in regard to the reimbursement claims of Alta Sharp. We affirm the judgment awarding the wedding ring to Alta Sharp.
AFFIRMED IN PART; REVERSED IN PART.
ARMSTRONG, J., dissenting in part.
MURRAY, J., dissents.
ARMSTRONG, J., dissenting in part.
I respectfully dissent in part. Holly Sharp, the parties' daughter, testified of her own, personal knowledge, not hearsay, that she knew both of the land and other assets that her mother had inherited and *332 of the sales of that property. Holly Sharp is a CPA, prepared her parents' tax returns for the 1985-96 period in question, and was thoroughly familiar with her parents' financial situation. Her testimony was corroborated by her parents' tax returns and the trial court found her to be credible.
During the 1985-96 time period in question, the parties owned and resided in a $911,000 historic home in the Garden District of New Orleans which contained $180,000 worth of furnishings, rugs, paintings and jewelry. During that same 1985-96 time period, the parties' income (aside from the proceeds of the sales of Mrs. Sharp's inherited property) consisted of Social Security and disability. It was a fair inference by the trial court that the parties' opulent, historic community property home could not have been maintained without the money received from the sale of Mrs. Sharp's inherited property. Thus, the trial court could reasonably conclude that Mrs. Sharp's separate property was "used" for the "use" or "benefit" of community property.
I do not believe that the trial court was clearly wrongmanifestly erroneous. Therefore, I would affirm.
MURRAY, J., dissents.
I dissent for the reasons assigned by Judge Armstrong.
NOTES
[1] On February 12, 2002, Mrs. Sharp died. The administrators of her succession have been substituted as the legal successors for the late Mrs. Sharp.
[2] The sale of property to Wal-Mart took place on August 18, 1995 in the amount of $183,192.35.